## 14136. REPUBLIC TRUCK SALES CORPORATION v. PADGETT.

1. The holder of a note is presumed to be such bona fide and for value. Civil Code (1910), § 4288.

2. The holder of a note as collateral security for a debt stands upon the same footing as the purchaser. Civil Code (1910), § 4289. "A transferee of a negotiable promissory note, who received the note from the payee before maturity, as collateral security for a preexisting debt, without notice of any equities existing between the maker and the payee, is a bona fide holder for value in the due course of trade. *Kaiser* v. *U. S. National Bank*, 99 *Ga.* 258 (25 S. E. 620); *Harrell* v. *National Bank of Commerce*, 128 *Ga.* 504 (57 S. E. 869)." *Linderman* v. *Atkins*, 143 *Ga.* 366 (2) (85 S. E. 101).

3. "Where such a holder of a negotiable promissory note, who has received it from the payee merely as collateral security, sues the maker of such note, if the maker has a valid defense against the original payee he can by appropriate plea set up such defense; and if it be sustained, the holder can recover no more than the debt which the collateral secured. *Hatcher* v. *Independence National Bank of Philadelphia*, 79 *Ga.* 547 (5 S. E. 111); *Laster* v. *Stewart*, 89 *Ga.* 181 (15 S. E. 42). But in such a suit the presumption is that the secured debt is sufficient to consume the collateral, and the onus of pleading and proving a less amount and the maker's equity against the original payee .is on the defendant. Daniel on Negotiable Instruments, § 832 (a); Duncan & Sherman v. Gilbert, 29 N. J. L. (5 Dutch.) 527." *Linderman* v. *Atkins*, supra. See also *Hancock* v. *Empire Cotton Oil Co.*, 17 *Ga. App.* 170 (4) (86 S. E. 434); *Clydesdale Bank* v. *Blackshear Mfg. Co.*, 18 *Ga. App.* 515 (2) (89 S. E. 1051); *Morrison* v. *Citizens & Southern Bank*, 19 *Ga. App.* 434 (4) (91 S. E. 509); *McDaniel* v. *Bank of Bethlehem*, 22 *Ga. App.* 223, 229 (95 S. E. 724).

4. This was an action against the maker by the holder of a note as collateral security. The defendant pleaded a valid defense as against the original payee, but there was no evidence to remove the presumption that the plaintiff was the holder of the note in due course, bona fide and for value, and although there was no plea that the debt for which the note was held by the plaintiff as collateral was less than the amount of the note, the evidence for the plaintiff showed this to be true, and a verdict was returned for the plaintiff for the amount of the debt so admitted. There was no evidence authorizing an inference that the debt so secured was less than the amount of the verdict. The verdict was therefore demanded.

5. Where the verdict returned is demanded by the evidence, any errors in the charge are immaterial.

6. Even the first grant of a new trial should be reversed if the verdict as rendered was demanded.

7. The defendant's motion for a new trial was based upon the general grounds, alleged errors in the charge, and certain alleged newly discovered evidence, relating to the amount and character of the debt

collaterally secured by the note, from two witnesses who gave evidence in the trial in behalf of the defendant. The preceding paragraphs sufficiently dispose of all grounds of the motion except that based upon the newly discovered evidence.

8. " Ordinarily, cumulative and impeaching evidence is not ground for a new trial; but when such a motion is made on the ground of newly discovered evidence, it must appear by affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence." Civil Code (1910), § 6086.

9. " The law provides, ordinarily, for but one trial for the adjudication of the rights of litigants, and a motion for another trial, upon the ground of newly discovered evidence, is for that reason necessarily extraordinary. Since it is to the interest of the commonwealth that there should be an end to litigation, motions for a new trial upon the ground of newly discovered evidence ' are not favored by law, and should not be. They are tolerated where it is apparent that grave injustice would result unless the newly discovered evidence is admitted on another trial; and only then when it is clear that ordinary diligence could not have discovered the evidence sought to be adduced, and that a different result, in view of the discovery, ought to obtain.' *Morris Storage Co.* v. *Wilkes,* 1 *Ga. App.* 754 (58 S. E. 234)." *Central of Georgia Railway Co.* v. *Clark,* 15 *Ga. App.* 16 (2); *Berry* v. *State,* 10 *Ga.* 511 (14); *Miller* v. *State,* 151 *Ga.* 710 (2), 713 (108 S. E. 38).

10. Where a witness was sworn and a party had full opportunity to examine him at length, a new trial should not be granted on the ground of newly discovered evidence coming from him, especially where it is merely cumulative. In the instant case it appears that one of the witnesses on whose affidavit, alleged to contain newly discovered evidence, the motion is based, and also a witness for the plaintiff, were examined on the issue relative to which the alleged newly discovered evidence is presented,— namely, the amount and character of the debt for which as collateral security the plaintiff held the note sued on. It is not the office of a motion for a new trial based on newly discovered evidence to furnish a further opportunity for examination of a witness. *Greer* v. *Raney,* 120 *Ga.* 290 (4); *Miller* v. *Mitchell,* 38 *Ga.* 312 (1); *Archer* v. *Heidt,* 55 *Ga.* 200 (2); *Elliott* v. *Pinkus,* 55 *Ga.* 163 (1); *Etheridge* v. *Hobbs,* 77 *Ga.* 531 (3) (3 S. E. 251).

11. But assuming that the alleged newly discovered evidence was in all other respects sufficient and properly supported by the accompanying affidavits as required by the statute (Civil Code of 1910, § 6086), if it was only prima facie good and was completely rebutted by a counter-showing, it afforded no reason for the grant of a new trial.

12. Prima facie evidence is such evidence as in judgment of law is sufficient, and if not rebutted remains sufficient. It may, in addition to other ways, be rebutted by developing additional undisputed facts consistent with its truth but tending to an opposite conclusion. In the *instant motion the only new fact which could possibly have changed the result was one tending prima facie to reduce the amount of the plaintiff's debt against the payee for which the note was held as col-

lateral security, but which fact, by a counter-affidavit, was admitted to be true, and was indisputably explained by the establishment of additional facts consistent with its truth. See *Georgia Railroad &c. Co.* v. *Smith,* 83 *Ga.* 626 (6) (10 S. E. 235); *Gainesville & Dahlonega Railway Co.* v. *Austin,* 127 *Ga.* 121 (5) ·(56 S. E. 254).

13. Where from the newly discovered evidence and that contained in the counter-showing, with all of the evidence introduced at the trial, the verdict would still be demanded as rendered, the verdict must stand.

DECIDED JUNE 25, 1923.

Complaint; from city court of Reidsville — Judge Cowart. November 6, 1922.

*Jones, Park & Johnston,* for plaintiff.

*A. S. Way, H. H. Elders,* for defendant.

BELL, J. The Republic Truck Sales Corporation sued C. C. Padgett upon a note payable to the Georgia Republic Company Incorporated and indorsed to the plaintiff. The verdict was in favor of the plaintiff, but thereafter a new trial was granted on the motion of the defendant, and the plaintiff excepted.

The only grounds of the motion for a new trial which need be considered have reference to the alleged newly discovered evidence. The note was for $5,000 and was made payable to the Georgia Republic Company Incorporated. The evidence for the plaintiff holder showed that the indebtedness for which the payee had indorsed the note as collateral was $4217.27, besides interest. The plaintiff's witness establishing this fact was fully cross-examined. When the evidence closed, a finding was demanded that this amount was correct, and a verdict was returned accordingly. This was so undoubtedly true that a discussion of the evidence in full seems wholly unnecessary. The plaintiff company was a manufacturer and seller of trucks. The payee of the note was a dealer and purchaser from the plaintiff, and pledged the note sued on as a guaranty against loss by the plaintiff growing out of their relation. After several carloads of trucks had been shipped to the payee but not all delivered, it was adjudicated a bankrupt, with a consequent liability to the plaintiff in the amount of the verdict, for " interest and freight charges and demurrage and storage on those trucks," as stated by the plaintiff's witness Stuart.

L. K. Rushing was sworn as a witness in behalf of the defendant, as was also T. E. Turner. The evidence of the former was apparently for the purpose of letting in the defense which the maker would have had against the original payee, while the evidence of

the latter, who was an officer of the Georgia Republic Company, related directly to the nature of the indebtedness of this company, the payee, to the plaintiff, though without exceeding particularity. From these witnesses is produced the alleged newly discovered evidence.

The factory of the plaintiff is located at Alma, Michigan. R. F. Stewart, who gave evidence for the plaintiff in regard to the amount of the debt owing to the plaintiff by the Georgia Republic Company, testified: "This amount of $4217.27 due us by the Georgia Republic Company is made up of interest and freight charges and demurrage and storage on those trucks [trucks that had been sold and shipped to the Georgia Republic Company]; the cars that we took back, I think a couple of them went up in Tennessee and two went to South Carolina (I don't mean carloads, — single trucks), and one or two went to Florida; I didn't send any of them back to Alma, either by carloads or individually. I know the freight on three carloads of trucks from Alma to Macon, and that is $870.31."

In the affidavit of Rushing upon which the motion is in part founded it is deposed: "that about the month of September, 1921, deponent, as one of a committee representing certain stockholders in the Georgia Republic Company Incorporated, of Macon, Ga., which company had gone into bankruptcy, for the purpose of ascertaining how much and the nature of the assets of said company had gone into the bankrupt court, and of ascertaining what amount the said company owed to the Fourth National Bank of Macon, Ga., with a view of liquidating and paying said Fourth National Bank, and deponent went to Macon, Ga., and while there called upon Messrs. Jones, Park & Johnston, attorneys at law, who represented at said time the said Fourth National Bank and the Republic Truck Sales Corporation of Alma, Mich., for the purpose of ascertaining how much the said Georgia Republic Company Incorporated owed to the said Republic Truck Sales Corporation. Deponent says that upon deponent making said inquiry of said attorneys, he was handed by them the attached statement (hereto attached, marked 'A'), as being a correct and full statement of the amount that said Georgia Republic Company Incorporated was indebted to said Republic Truck Sales Corporation of Alma, Mich. Deponent says that said statement so far as the

typewritten matter contained therein is exactly as the same was handed to deponent by said attorneys, the other words and figures written thereon being done by deponent in making calculations, etc. Deponent says that the defendant in above-stated case, C. C. Padgett, was not aware of the fact that deponent had the said statement before the trial of said case, and, so far as the deponent knows, had no notice of the existence of any such statement, nor did the attorney representing said C. C. Padgett in said case have any knowledge or notice, so far as known to deponent, of the existence of said statement prior to the trial of said case." In the statement attached is contained the item " Freight charge for return of trucks to Alma, Mich., $993.10." It was thus sought by the movant to establish that this item was unjust, in view of the evidence of Stewart that none of the trucks were returned to Alma.

The exact date of the filing of the suit is not shown, but it appears that it was made returnable to the September term, 1921, convening on the first Monday in September. It will be noticed that it was during this month and long before the trial that the statement including the item mentioned was given to Rushing by the plaintiff's attorneys. In rebuttal it is deposed by R. F. Stewart, the agent of the plaintiff already mentioned, that the statement which was furnished to Rushing by the plaintiff's attorneys was made up by him on June 1st (1921?) when he "had simply gotten up a statement for the freight charges that would be on a return of the trucks to Alma. At that time he had not determined whether to ship the trucks to Atlanta or some other point;" that he finally determined to ship the trucks to Atlanta at a transportation charge of $455, and that this and certain other items were included in the amount of the indebtedness shown upon the trial in lieu of the item of $993.10. It is therefore shown that this item was excluded from the testimony of Stewart upon the trial, and that it did not enter the verdict, but that the other items mentioned were included instead, amounting to less, with the result that the indebtedness claimed by the plaintiff against the Georgia Republic Company in the trial, for which the verdict was rendered, was less than that which was shown in the statement procured by Rushing from the plaintiff's attorneys. These facts as stated by Stewart are fully consistent with the affidavit of

Rushing, the truth of which the plaintiff admits, and thus completely explains. We think therefore that the effect of the newly discovered fact produced through the affidavit of Rushing was completely rebutted by the undisputed proof of additional facts consistent with its admitted truth, but pointing to a different conclusion.

Even if there were possibly some items included in the indebtedness claimed upon the trial as to the necessity of which as a charge by the plaintiff against the Georgia Republic Company an issue might have been made, none was made, and, as seen, the onus was upon the defendant to prove that the debt collaterally secured was less than the amount of the note, and likewise less than the amount stated by the plaintiff. In other words if the sum which the plaintiff through its evidence showed as the debt for which it claimed to hold the note as security was incorrect or unjust in any of its items, it was incumbent upon the defendant to show this fact, it not being disclosed by any of the evidence for the plaintiff. The presumptions in relation to this issue were with the plaintiff, and no evidence adduced upon the trial removed it.

The evidence offered as newly discovered and coming from the witness Turner was only a slight amplification of his testimony given upon the trial. Both relate to the indebtedness to the plaintiff of the Georgia Republic Company. This witness testified upon the trial that the note sued upon was " put up as collateral to cover a certain proportion of the purchase price on $35,000 worth of trucks that were to be shipped, the proportion referred to being roughly 15 per cent." " The note was turned over to the plaintiff to make them safe in shipping the $35,000 worth of trucks . . which were to be shipped with bill of lading attached, and to assure them that the bill of lading would be lifted when the trucks arrived. Two carloads of the trucks were shipped; one of them was lifted, the other was not. There was about $5,218 worth of trucks in each car. The Georgia Republic Company Incorporated went into bankruptcy March 11, 1921; its assets were sold out by the trustee in bankruptcy." The affidavit of this witness attached to the motion is a mere repetition of his evidence at the trial, except a further statement as follows: that the carload of trucks not lifted by the Georgia Republic Company " was taken possession of by the said Republic Sales Corporation and disposed of by said

corporation. As the price list was unchanged from the date of invoice to the date that the Republic Sales Corporation took over the four trucks which were not lifted is evidence that there could not have been any depreciation in value of said trucks, and for these reasons deponent can see no reason why the said C. C. Padgett is indebted in any amount to the plaintiff in said case upon the said note sued upon." The affidavit fails completely to show that the Georgia Republic Company is not indebted to the plaintiff in some amount, and no data whatever is given by which a jury could determine what amount the indebtedness was, if less than the sum the plaintiff claimed.

From the foregoing analysis of the newly discovered evidence we think that if a new trial were had, it could not possibly change the result. If we add to the evidence adduced upon the trial that which is offered in the motion, including the counter-showing, the identical verdict would still be demanded for the plaintiff. Therefore, as a matter of law, the motion was without merit. We reach this conclusion independently of other reasons appearing in the headnotes, but we think that the newly discovered evidence was impeaching and cumulative only. Each of the witnesses from whom it is produced was sworn and testified in behalf of the defendant upon the trial, where the question of the nature and amount of the debt collaterally secured were dealt with, and upon which the plaintiff's witness Stewart was cross-examined at length. Without the establishment of some very extraordinary circumstance as a reason why the evidence produced in the motion was not elicited during the trial, a court would be unwarranted in ordering a new trial merely for the purpose of further examination. See *Holder* v. *Farmers Exchange Bank of Stillmore,* ante, 400.

The joint deposition of the defendant and his sole counsel during the trial with reference to the matter contained in the affidavit of Rushing showed the following: that each of them exercised all due and ordinary diligence at and before the trial to discover all evidence favorable to the defendant in said case, but failed to do so until after the trial and at or about the time of the procurement of the witness's affidavit, and that it would have been " almost impossible" for either of them to have discovered the evidence before the trial, " for the reason that said suit was an ordinary suit on the said note sued upon, it not appearing from

said suit that said note had been transferred to the plaintiff for the purpose of securing it for any particular debt or liability, and that said fact did not develop until the trial of said case, when a witness for the plaintiff testified that said note was taken by plaintiff to secure it against loss for freights, demurrage, or storage that would be incurred by it for trucks sold to be shipped by it to Georgia Republic Company Incorporated." Their separate depositions in regard to the alleged new evidence produced through Turner are not more specific.

These general statements of the attorney and the movant do not disclose any extraordinary circumstance preventing the development during the trial of the evidence coming now from Rushing and Turner, who were sworn thereat. The fact that Turner testified by depositions would hardly change the rule. The question now presented was one of legitimate inquiry when the deposition was taken, and no sufficient reason is shown why further examination upon the point was not made at that time or why the issue was not then anticipated. It is clearly immaterial that a part of Turner's evidence was given by depositions, when it appears that he was then examined and testified in a general way touching the same matters in relation to which his newly discovered evidence is offered, and when too the last mentioned, as we have shown, could not possibly have presented any issue affecting the amount of the plaintiff's recovery.

The order of the judge shows that he based his action granting the new trial solely upon the newly discovered evidence coming from T. E. Turner, but we have though it proper to pass also upon the ground of the motion based on the affidavit of Rushing, because if the judgment granting the new trial had been right for any reason, it would have been our duty to give judgment of affirmance.

For the several reasons indicated, a new trial should not have been granted. Our conclusions are based upon the well-established principles announced in the headnotes and the authorities there cited. It only remained to apply them to the facts of this case. It is quite true that the grant of a new trial will not be disturbed if there was a basis for the exercise of a discretion. There can be no exercise of discretion, however, unless there are facts upon which it may operate. There was nothing in the motion in this

case warranting a discretionary action. As a matter of law, from the facts disclosed, a refusal of the motion was demanded. To state it differently, but inaccurately, as is oftentimes done, the grant of a new trial when a contrary ruling is demanded amounts to an abuse of discretion, and in such a case the grant will be reversed.

*Judgment reversed.*   *Jenkins, P. J., and Stephens, J., concur.*