## 15459.   HAAS & HOWELL *v.* GODBY.

1. "Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith, nor in case of an agent, that he delivers the property to his principal before receiving notice of the claim of the owner. If an agent takes the property of another without his consent and delivers it to the principal, it is a conversion, and trover will lie for the recovery of the property or for damages, as the plaintiff may elect."

(*a*) "An agent, who for and in behalf of his principal takes the property of another without the latter's consent, is as to him guilty of a conversion, although, being ignorant of the true owner's title, the agent may have acted in perfect good faith; and such agent may be sued in trover for the property, even after his delivery of it to his principal."

(*b*) Assuming that the plaintiff was the owner of the property in dispute, the evidence was sufficient to authorize the inference of a conversion by the defendants as alleged.

(*c*) It is true that admissions may be the subject of explanation, but where the party to whom they are ascribed denies that he made them, and it is thus issuable before the jury as to whether they were made or not, and there is no evidence that, if they were made, their author was laboring under a misapprehension of the facts, their effect is not avoided as a matter of law merely by other testimony pointing to a different conclusion, even though such other testimony is not directly contradicted.

2. Assuming that where a verdict is rendered in favor of the plaintiff in a trover case for a certain sum as the value of the property converted, and for another sum as hire, the defendant may, under a general assignment attacking the verdict as a whole, bring into question the sufficiency of the proof to sustain the verdict as to the amount awarded for hire, the verdict for hire was fully warranted by the evidence in this case.

3. Title to property in a certain person, once proved or admitted, is presumed to continue until the contrary appears, but the law presumes that title follows the possession of property, and this presumption applies to personalty as well as realty. Where A is shown to have been at one time the owner and possessor of property, and it is proved that subsequently the property is in the possession of B, and where nothing else appears, the presumption of the continuance of the title in A is rebutted, the presumption then being that the title went with the property to B. Applying these principles to the facts dealt with in the third division of the opinion, the inference was warranted that the title to the property in dispute was in the plaintiff at the time he brought the action for its recovery.

4. Nor was such inference negatived by additional facts stated and discussed in the 4th division of the opinion. The plaintiff claimed to have purchased the property in question on November 6, 1920. It was conclusively established that some time prior thereto the title to the property was in a person other than the plaintiff's vendor, and that such other person, who held a policy of insurance thereon against theft, had, subsequently to the plaintiff's purchase, collected the insurance upon a

claim that the property had been stolen from him, and had thereupon undertaken to invest the insurer with title. The jury were authorized to find, under the evidence, that the automobile had not been stolen, but that the title prior to the origination of the claim of the insurance company had passed from the assured into the plaintiff's vendor, and from the latter to the plaintiff, notwithstanding that such vendor delivered to the plaintiff a fictitious or forged bill of sale along with the delivery of the property, the circumstances warranting the conclusion that the assured and the plaintiff's vendor had entered into a conspiracy with reference to the use of this instrument, and that there was a combination between them whereby the assured might fraudulently collect the insurance although he had conveyed the title to the plaintiff's vendor.

5. The decisive issue between the parties being whether or not the property in dispute—an automobile—had been stolen as the assured had represented to the insurance company, which on the collection of the insurance he purported to invest with the title, there was no error harmful to the defendants in the following instruction: "If you believe, under the evidence, that the car was not stolen, but was sold to the plaintiff with the knowledge and consent of [the assured] in November, 1921, then [the assured] would have no title or interest in the car, and could not have conveyed any right to the insurance company or any other person;" the assignment thereon being that there was no evidence to show that the property was sold to the plaintiff with the knowledge and consent of the assured. If the automobile was not stolen, no other inference was authorized than that the plaintiff in his purchase procured the title, and the defendants were not prejudiced by the instruction that, as a condition to this result, the sale must have been with the knowledge of the assured, whether there was evidence authorizing an inference of actual knowledge on his part of the immediate transaction or not. If the plaintiff's vendor was the assured's vendee, as the jury were authorized to find, then the sale to the plaintiff was necessarily by the assured's implied consent.

6. Any distinct act of dominion wrongfully asserted over another's property, in denial of his right or inconsistent with it, is a conversion. Any act which negatives or is inconsistent with the owner's title and right of possession is necessarily wrongful. It is not error, therefore, to instruct the jury that such an act would amount to a conversion, without also informing them that in order to amount to a conversion it must have been wrongful.

7. Nor, in view of the issues, did the court commit reversible error in so instructing the jury as to make the claim asserted by the defendants, —namely, that the title to the property was in the insurance company, —depend upon its right of subrogation, notwithstanding that the insurance company at the time of paying the alleged loss took a writing from the assured expressly conveying to it the property which was the subject-matter of the insurance, since the company could not have had title either by this instrument or under the right of subrogation unless the property had in fact been stolen, and since the instruction complained of required the jury, if they found the property had been stolen, to recognize the right of the insurance company under its claim of

subrogation as fully as they might have recognized such right under the purported express conveyance.

8. The evidence authorized the verdict, and for no reason urged was it error to overrule the defendants' motion for a new trial.

DECIDED DECEMBER 15, 1924.

Trover; from Fulton superior court—Judge Ellis. January 15, 1924.

Application for certiorari was denied by the Supreme Court.

On July 20, 1920, Morris Miller purchased and had delivered to him a new five-passenger Buick touring automobile from John M. Smith Company, taking a bill of sale from the seller to himself. On the same date he procured to be issued in his favor by the Provident Washington Insurance Company, through their agents Haas & Howell, a policy upon the automobile, insuring it against theft for the period of one year. The policy contained a provision "requiring the assured to assign to the company upon the payment of a loss for the theft of the car all of his right, title, and interest in and to the car, as well as all right of recovery against any party for loss or damage to the car." On December 27, 1920, Miller submitted to the company sworn "proofs of loss," in which he claimed that the automobile was stolen from him on the previous October 27th. The amount of his claim was $1450. Attached thereto was the original bill of sale procured by him from the dealer at the time of his purchase. The insurer paid the claim and took from him a receipt, which recited that in consideration of the payment he invested the company "with full rights of ownership in and title to" the automobile, and in which he also subrogated the company to all his "claims or rights against any third person or persons to the amount of the loss and expenses paid."

The Automobile Underwriters' Detective Bureau, acting for the insurer and having located the automobile in the possession of H. A. Godby, demanded the same of him on December 3, 1921. The detectives declared to him that the car was stolen property to which the insurance company had title, and inquired of him whether he would surrender it peaceably or would exact that they proceed at law for its recovery. He permitted them to take it without process. He subsequently brought an action of trover against Haas & Howell, in which a verdict was rendered in his favor for $1000 as the value of the property, and for $500 as hire. The defendants made a motion for a new trial, which was overruled, and error is assigned

upon that judgment. Other material facts are given in the opinion. All the transactions involved in the case occurred in the city of Atlanta except as otherwise stated.

*Underwood, Pomeroy & Haas,* for plaintiffs in error.

*Hardwick & Jordan,* contra.

BELL, J. (After stating the foregoing facts.)

1. One of the contentions made by the plaintiffs in error, the defendants in the court below, is that, assuming that the plaintiff had title to the automobile, the evidence failed to show any possession of or any exercise of dominion over the car by them, or any act on their part amounting to a conversion. It is insisted that the evidence established, without dispute, that the Automobile Underwriters' Detective Bureau was maintained by certain insurance companies, including the Provident Washington, and that the defendants Haas & Howell had no connection therewith. After the car had been seized by the detectives it was stored in a garage, from which it was later delivered to a salvage company on the order of the detective bureau. The salvage company sold it for the insurer and remitted to the insurer the proceeds of the sale. It is contended that the defendants had no relation, directly or indirectly, to any of these transactions.

We can not agree that the evidence was such as to demand a finding in favor of these contentions. Mr. Herman J. Haas, a member of the defendant firm, testified that when Miller informed them that the car was stolen they immediately notified the Automobile Underwriters' Detective Bureau "to try and look out for it." The detectives, on the seizure of the car, having referred Godby to Haas & Howell, his wife called at their office on the same day and had a conversation with Mr. Haas, looking to a recovery of the automobile. She testified: "I went to the office of Haas & Howell . . to see if I could get the car, and I talked with Mr. Herman Haas. . . He said they had the car; I understood him to say that. He says, 'We have the car.' I says, 'What can I do Mr. Haas?' And he says, 'I don't know, unless I sold it back to you.' I says, 'I don't want to buy our own car,' and he says they had the car and it was stored down on Auburn Avenue. He says, 'We have it stored.' . . I was in the office of Haas & Howell at that time. . . He wouldn't deliver the car back. He insisted I pay the money for it. He called up John M. Smith and asked

him the price of a car, and then turned to me and said, 'The price of the car, judging by what they said, would be between $800 and $1000,' and he said he could sell the car back to me. . . I did not pay the $600, and they never delivered the car to me. . . I went there for the purpose of getting the car." "I don't know that what he did was on the information from my conversation, or on his own knowledge. . . I couldn't say that Mr. Herman Haas spoke of it as 'them' or 'they.' I couldn't say that the [he] said 'we' the insurance company. . . He said 'we.' I presumed he meant Haas & Howell. He didn't say the insurance company." The plaintiff also introduced a letter dated March 17, 1922, signed by Haas & Howell, addressed to his wife, reading as follows: "Replying to your favor of the 11th, I regret exceedingly that we can not accept $400 for this car. As stated to you before, $500 would be the minimum price that I would be willing to sell it for." It is not insisted that Mr. Haas was not speaking with the full authority of the firm of which he was a member. If, in using the word "we," he referred to the insurance company and not to his firm, he nevertheless, in thus speaking in the first person, identified his firm with the act of the insurance company in seizing the car. The testimony of the plaintiff's wife was contradicted at every point where it would tend to connect the defendants Haas & Howell with the conversion, but, the jury having found in favor of the plaintiff, this court, on a consideration of the general grounds of the motion, is bound by that version of the testimony most favorable to the plaintiff which the jury were authorized to adopt. The evidence of Mrs. Godby and the letter quoted above tended to show admissions on the part of the defendants from which it was inferable that they were parties to the conversion of the automobile,—assuming that the plaintiff had title thereto. Upon this point the jury were fully authorized to find in favor of the plaintiff.

"Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith, nor in case of an agent, that he delivers the property to his principal before receiving notice of the claim of the owner. If an agent takes the property of another without his consent and delivers it to the principal, it is a conversion, and trover will lie for the recovery of the property or for damages, as the plaintiff may elect." *Flannery* v. *Harley,* 117 *Ga.* 483, 485

(43 S. E. 765). "An agent, who for and in behalf of his principal takes the property of another without the latter's consent, is as to him guilty of a conversion, although, being ignorant of the true owner's title, the agent may have acted in perfect good faith; and such agent may be sued in trover for the property, even after his delivery of it to his principal." *McConnell* v. *Prince,* 12 *Ga. App.* 54 (76 S. E. 754), and cases cited. See also *National Bank of Tifton* v. *Piland,* 22 *Ga. App.* 471 (96 S. E. 341); *Coley* v. *Dortch,* 139 *Ga.* 239 (77 S. E. 77); *Wilkes* v. *Dixie Cotton Co.,* 143 *Ga.* 588, 589 (85 S. E. 706); *Ocean Steamship Co.* v. *Southern States Naval Stores Co.,* 145 *Ga.* 798 (89 S. E. 838); *Porter* v. *Jones,* 23 *Ga.* 467 (1); *Byrd* v. *Freeman,* 32 *Ga. App.* 112 (122 S. E. 630).

It is true that admissions may be the subject of explanation (*Hill* v. *Armour Fertilizer Works,* 21 *Ga. App.* 45 (5), 93 S. E. 511; *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433 (4), 96 S. E. 269; 1 R. C. L. 473, § 9), but where the party to whom they are ascribed denies that he made them, and it is thus issuable before the jury whether they were made or not, and there is no evidence that, if they were made, their author was laboring under a misapprehension of the facts, their effect is not avoided as a matter of law merely by other testimony pointing to a different conclusion, even though such other testimony is not directly contradicted. *Chero-Cola Bottling Co.* v. *Southern Express Co.,* 29 *Ga. App.* 656 (2) (116 S. E. 325); *Redd* v. *Lathem,* 32 *Ga. App.* 214 (1) (123 S. E. 175). Thus, the jury were not precluded from inferring, from the evidence in relation to the admissions, that the defendants were parties to the conversion, merely because there was other testimony which, if standing alone, might have demanded the conclusion that the defendants were in no way connected therewith. The rule is not here applicable, that, where an inference is drawn solely from circumstances and is not demanded thereby, it may be overcome as a matter of law by the positive and uncontradicted testimony of an unimpeached witness, *consistent* with the circumstantial evidence relied on by the other party. *Frazier* v. *Georgia R. Co.,* 108 *Ga.* 807 (1) (33 S. E. 996); *Western & Atlantic R. Co.* v. *Beason,* 112 *Ga.* 553 (1) (37 S. E. 863); *Atlantic Coast Line R. Co.* v. *Drake,* 21 *Ga. App.* 81 (4) (94 S. E. 65); *Neill* v. *Hill,* 32 *Ga. App.* 381 (123 S. E. 30).

If the defendants had admitted (or not denied) the making of

the admissions, and had shown by unimpeached evidence consistent therewith that they were made by mistake, or the like, a very different question would have been presented.   See *Republic Truck Sales Corp.* v. *Padgett,* 30  *Ga. App.* 474 (12) (118 S. E. 435).

2.   It is further urged, that the verdict should be set aside on the ground that there was no sufficient proof of the value of the hire. The only evidence on this point was that of the plaintiff himself, who testified as follows:   "I don't know what the reasonable value of the hire of that car would be per day,—I have never hired a car very much,—but anywhere from $5 to $10 a day.   I don't know much about the subject, but I should say $5 a day for hire." There was no objection to this testimony.   The original cost of the automobile, which was a Buick touring car, was not in dispute.   It could not have been in use more than a year and a half before the detectives seized it.   The jury upon competent evidence found its value at that time to be $1000.   The testimony of the witnesses as to the value of the hire thus related to the hire of an article, as to the cost, value, and apparent serviceability of which the jury were informed by the other evidence.   While the plaintiff estimated that the value of the hire would be $5 per day, the jury allowed only about a dollar per day from the date of the seizure until the trial. We can not say that their finding on this issue was without evidence to support it.   See Civil Code (1910), § 5875; *Moon* v. *Wright,* 12  *Ga. App.* 659 (7) (78 S. E. 141) ; *Maynard* v. *American Railway Express Co.,* 29  *Ga. App.* 329 (2) (115 S. E. 35), and cases cited.

This contention of the plaintiff in error is made only under the general grounds of the motion, in which the verdict is attacked as a whole.   It may be that there should have been a special assignment going to the specific part of the verdict relating to hire. Believing, however, that the finding for hire was warranted, we assume, without deciding, that the question is properly raised.   See *Hobbs* v. *Citizens Bank of Wrens,* 32 *Ga. App.* 522 (8) (124 S. E. 72).

3.   There is yet another question presented under the general grounds of the motion, and it is one that has caused us much difficulty.   As a preface to its consideration we should state some additional facts.   The plaintiff purchased the automobile on November 6, 1920, from a man representing himself as Scott Hughes.

Hughes had run an advertisement of an automobile for sale in an Atlanta newspaper, to which the plaintiff had responded by telephone. As a result Hughes carried the car to the plaintiff's home in College Park, and sold and delivered it to him for the consideration of $1150, which the plaintiff paid by a check produced at the trial. It will be noticed that this transaction was only about ten days after the loss as alleged by Miller in the proofs of loss submitted by him to the insurer, and was some weeks before the insurer paid the "loss" and took the receipt purporting to convey to it the title to the automobile and to subrogate it to the rights of Miller. There is no question as to the identity of the car, and it is undisputed that the title at one time was in Morris Miller. Miller was introduced as a witness by the defendants, and testified to the facts generally set forth in the proofs of loss. His evidence, in part, was as follows: "Some time in October I had to go to New York . . on some business. I sent the chauffeur home to get some papers, so when he came back with the papers, a short time afterwards, when he went down to get the car, it was missing, and I have never seen it until this day. The last time I saw it was in October. . . I had it just a short time, a couple of months or a little longer. I was paid under my insurance policy for the theft of my car; I think I was paid $1450. I never sold that car or transferred it to anybody but the insurance company. I never sold it to Scott Hughes, I don't know Scott Hughes. . . I never turned that car over to some one who called himself Scott Hughes, for the purpose of selling it." There was no other evidence whatsoever in regard to the circumstances of the alleged theft of the automobile. Neither the "chauffeur" nor "Hughes" testified, nor was either accounted for. The plaintiff introduced in evidence certified copies of an indictment and conviction of Morris Miller in the State of Louisiana for the offense of highway robbery, and of an indictment and conviction against him in Fulton superior court for the offense of receiving stolen goods. Two witnesses introduced by the plaintiff testified that they knew Miller's general character, that it was bad, and that they would not believe him on oath.

It is insisted on behalf of the plaintiffs in error that the evidence demanded a finding against the plaintiff's claim of title, and that the title to the automobile was in a third person, namely the insurance company. Generally, where the plaintiff in a trover

action relies on his title, to recover possession of property, and the evidence shows that a paramount outstanding title is in a third person, he can not recover. *Beverly* v. *Wilson,* 19 *Ga. App.* 393 (1) (91 S. E. 515). A plaintiff in trover must recover on his title, and not on a lack of title in the defendant. *Everroad* v. *Dickson Planing Mill Co.,* 26 *Ga. App.* 329 (1) (106 S. E. 193) ; *Perdue* v. *Griffin,* 32 *Ga. App.* 100 (1) (122 S. E. 713). There is also a rule that "the bare possession of goods without any strict legal title confers a right of action against a mere wrongdoer, having no right, and not clothed with any authority from the real owner." *Mitchell* v. *Georgia & Alabama Railway,* 111 *Ga.* 760 (1), 763 (36 S. E. 971, 51 L. R. A. 622). The code provides that "mere possession of a chattel, if without title, or wrongfully, will give a right of action for any interference therewith, except as against the true owner of the person wrongfully deprived of possession." Civil Code (1910), § 4482. Whether, in view of this code section, the defendants will be permitted to assert as a defense that the title was in a third person,—that is, in the insurance company,—unless they were authorized to act for it in the transaction which the jury treated as a conversion, it is unnecessary to decide. We will assume that they were entitled to set up that defense. Did the evidence then demand a finding in their favor upon this question?

Title to the property having been shown to have been at one time in Morris Miller, a presumption of his ownership would continue until the contrary appeared. *Coleman* v. *Rice,* 105 *Ga.* 163 (31 S. E. 424) ; *Russell* v. *Morris,* 134 *Ga.* 65 (2) (67 S. E. 404) ; *Sasser* v. *Byrd,* 8 *Ga. App.* 824 (70 S. E. 157). There is another rule, however, to the effect that the law presumes that title follows the possession of property, and this presumption applies to personalty as well as realty. *McLendon* v. *Horton,* 95 *Ga.* 54 (2) (22 S. E. 45) ; *Reid* v. *Bull,* 25 *Ga.* 28 (3) ; *Mashburn* v. *Dannenberg Co.,* 117 *Ga.* 567 (4), 579 (44 S. E. 97) ; *Burt* v. *Rubley,* 113 *Ga.* 1144 (1) (39 S. E. 409) ; *Harris Loan Co.* v. *Elliott,* 110 *Ga.* 302 (3) (34 S. E. 1003) ; *Collins* v. *Taggart,* 57 *Ga.* 355, 356 ; *Culpepper* v. *Culpepper,* 18 *Ga. App.* 182 (3) (89 S. E. 161) ; *Branch* v. *American Agricultural Chemical Co.,* 22 *Ga. App.* 52 (2) (95 S. E. 476) ; *Cox* v. *Adams,* 2 *Ga.* 158 (2) ; *Mitchell* v. *Georgia & Alabama Railway,* 111 *Ga.* 760 (supra). "Generally a deed is not necessary to convey titles to personalty." Civil Code (1910), § 4186. Thus,

when it appeared that the plaintiff was in the peaceable possession of the automobile prior to the execution of the papers upon which rested the claim of the insurance company, and that such possession remained in the plaintiff until the seizure of which he complained in his suit, the presumption arose, in the absence of anything to the contrary, that the title was in him; that it had passed to him from Miller through Scott Hughes with the delivery of the automobile. The presumption that title was still in Morris Miller was overcome by the presumption that the title followed the car. See *Farmers Bank* v. *Powell,* 29 *Ga. App.* 100 (2) (113 S. E. 818). The burden of the evidence was then shifted to the defendants to maintain their contention that the title did not follow the property, but that because it had been stolen the title thereto remained in Miller until he made the conveyance to the insurance company. In order to carry this burden they relied solely upon the testimony of Miller. In view of the impeaching testimony, the jury were authorized to disregard his evidence entirely. Civil Code (1910), §§ 5883, 5884. Their verdict indicates that they did so.

The mere act of impeachment, however, could not establish a substantive fact. *Central Railroad Co.* v. *Maltsby,* 90 *Ga.* 630 (4) (16 S. E. 953); *Georgia Railroad Co.* v. *Andrews,* 125 *Ga.* 85, 87 (54 S. E. 76); *Stallins* v. *Southern Ry. Co.,* 140 *Ga.* 55, 57 (78 S. E. 421). The case should be considered, therefore, merely as if Miller had never testified. The jury having had the right to discard his evidence in toto, and it appearing by the verdict that they did so discard it, we should pass upon the question as to whether the verdict was authorized just as though we found no testimony from him in the record. This leaves the case exactly where it was before the defendants introduced him. We have seen that at that point there was a presumption that the title passed out of him and through Scott Hughes into the plaintiff Godby along with the possession of the automobile. The defendants having failed to carry the burden,—that is, the evidence which they offered for that purpose having been wiped out,—the presumption in favor of the plaintiff continued. That presumption being that Miller had parted with his title not later than November 6, 1920, before the execution of the papers to the insurance company on the following December 27th, it results that these papers gave the insured nothing, and the attempt on the part of the defendants to assert

title in a third person or to show that the plaintiff himself did not have title failed.    See, in this connection, *Giles* v. *Citizens Insurance Co., 32 Ga. App.* 207 (122 S. E. 890).

4.    There are certain other facts which are material to be examined in connection with the matters discussed in the preceding paragraph.    We have thus far omitted them for the purpose of clarity.    The plaintiff testified: "The man I bought the car from produced a bill of sale from John M. Smith. . . It seems there had been a car bought from one party and delivered to another.    He brought and purported to give me the original bill of sale from John M. Smith Company.    He also gave me a bill of sale himself at the time I delivered the check for the car."    It appears that the original and true bill of sale issued by John M. Smith Company to Morris Miller was attached to the proofs of loss and remained thereafter in the possession of the insurance company. What Hughes claimed to be a bill of sale from John M. Smith Company must, therefore, have been a forgery.    This document is not shown in the record, and we are unable to determine whether it purported to convey the property to Scott Hughes or to some other person.    It is inferable from the testimony of the plaintiff that the grantee therein was some other person.    However, in our view, the result of the case would not necessarily be different whether the grantee was Scott Hughes or some one else.

The question now is, whether or not the presumptions in favor of the plaintiff which we have alluded to in the preceding paragraph were conclusively rebutted by the fact that Hughes delivered along with the automobile a spurious bill of sale.    In other words, did this fact impeach the presumption to which the plaintiff otherwise would have been entitled, and leave intact the other presumption that the title remained in Morris Miller, in the absence of anything to the contrary?    We must remember that we are still to consider the case as if Morris Miller had never testified.    Thus, we have Miller in the possession of the car at one time, and it is next seen in the possession of Hughes.    The inference is authorized, therefore, that the property passed directly from Miller to Hughes, there being no evidence of intermediate possession by any one else.    If this be true, they at some time came together and consummated a transaction with reference to the automobile, unless it was stolen. We have attempted to show that under the facts as dealt with in

the preceding division of this opinion, the inference was not demanded that the car had been stolen. Was it demanded in view of the further facts touching the fictitious bill of sale? If Hughes was the purported grantee in such document, the inference would be authorized that he himself was implicated in the forgery. The jury were also warranted, as we have seen, in finding that Miller was a person of bad character. The jury could thus have believed that neither Hughes nor Miller would seriously object to participation in a dishonest transaction. While, as we have stated above, the mere act of impeaching a witness does not prove a substantive fact, yet his general bad character as shown at the same time could be considered by the jury in determining whether he would enter into a scheme to defraud the insurance company. *McClure* v. *State Banking Co., 6 Ga. App.* 303 (65 S. E. 33). Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Civil Code (1910), § 4626.

Under the circumstances, we do not think that the presumption which otherwise would have existed in favor of the plaintiff was necessarily negatived by the fact that his vendor delivered to him a forged bill of sale. The jury in their rightful province were authorized to believe that Scott Hughes procured the automobile directly from Morris Miller, and that the instrument in question did not show a theft, but was a device concocted between them for the double purpose of concealing Miller's prior ownership, making it safer for him to represent that it had been stolen, and of satisfactorily meeting whatever inquiry a purchaser might make as to Hughes' right to sell, and that the genuine bill of sale was retained for the purpose of delivery to the insurance company. They were authorized thus to find that the forged bill of sale was the result of a mere collusion between Miller and Hughes to defraud the insurance company, and, in spite of it, to conclude that the true legal title was transmitted to the plaintiff in the sale to him by Hughes.

The case would not be weaker for the plaintiff if the grantee in the instrument was some one other than Hughes himself.

The evidence authorizing the inference that both Hughes and Miller were characters who would not hesitate to engage in a fraudulent enterprise, and that there was no intermediate holder,

we can not say that the conclusion was demanded that Hughes did not have the right to sell the automobile, merely because he may have misrepresented the true source of his title.

Let it be understood that we do not hold in this connection that proof that the two men were of bad character would be sufficient, without more, to establish the existence between them of an unlawful agreement to make a covert disposition of the automobile in order that one of them might defraud the insurer by a false claim of loss. We saw in the preceding division that in the absence of the fraudulent bill of sale the inference was warranted (even demanded when we also omit the testimony of Miller) that the title to the property was in the plaintiff. What we hold here is, that this inference was not conclusively rebutted by the presence of that document, but that the facts touching the same, in view of all the circumstances, could have been explained by the jury in some other way. Thus, the finding of the existence of such conspiracy, which we think was authorized upon a consideration of *all* the evidence, depends not alone upon the facts first referred to in this immediate connection, but upon those together with the inference which we had observed to have been authorized in favor of the plaintiff's claim of title, before we entered upon a discussion of the effect of the forged bill of sale.

The position of the defendant in error may be strengthened by the additional facts that Hughes advertised the automobile for sale in a newspaper in the city where Miller resided and within a very few days after the date of the alleged theft; that he demonstrated it upon the open streets shortly thereafter in the town of College Park; that he delivered what appeared to the plaintiff to be the original keys to the car, and that Miller, when making the proofs of loss, on being called upon by the defendants, then as insurance agents, to deliver the keys, represented that he had them and would produce them, but never did.

5. What is said above practically disposes of one of the grounds of the motion for a new trial, in which error is assigned upon the following charge of the court: "If you believe, under the evidence, that the car was not stolen, but was sold to the plaintiff with the knowledge and consent of Morris Miller in November, 1921, then Morris Miller would have no title or interest in the car and could not have conveyed any right to the insurance company or

any other person." It is insisted that there was no evidence to show that the car was sold to the plaintiff with the knowledge and consent of Miller, and thus that the charge was unwarranted.

The decisive issue in the case was whether the car was stolen. If it was, the insurance company had the title thereto. If not, the title was in the plaintiff. Perhaps the possession of the automobile by Hughes would not raise a presumption that he was the agent of another to sell it, but merely that he himself was the owner. If he had bought it from Miller, his resale would necessarily be by Miller's consent, though not perhaps with his knowledge. If Hughes procured the automobile from Miller by purchase, actual knowledge by Miller of the resale would be immaterial, and an unauthorized reference thereto in the charge would be harmless. The conclusion is demanded that if the car was not stolen, there was a valid sale to the plaintiff. The excerpt complained of having instructed the jury that, if they believed the car was not stolen, then Miller would have no title or interest therein and could not have conveyed any right to the insurance company, the defendants were not prejudiced by the instruction that, as a condition to this result, the car should have been sold to the plaintiff with the knowledge and consent of Miller.

In saying in the preceding paragraph that the jury were authorized to infer the existence of a collusion between them, we referred to a possible scheme by the execution of which Miller would be enabled to collect unjust money from the insurance company, and not to a state of facts establishing the relation of principal and agent for the sale of the automobile. It may be that the only inference beneficial to the plaintiff to be drawn from the mere fact that the possession of the car, which at one time was in Miller, subsequently passed to Hughes was that Hughes thereupon became the owner authorized to sell in his own right, and not as agent for another, and that the charge complained of was inaptly intended to submit the question of agency. Even in this view, we would think the charge harmless for the reasons given.

6. Error is also assigned upon the following charge of the court: "By conversion is meant any wrongful act of dominion in denial of the plaintiff's right. That is to say, if the defendants did any act negativing or inconsistent with plaintiff's possession, the plaintiff can recover against them." The only complaint upon this

excerpt is that it omitted to tell the jury that the defendants' act should be wrongful before it could amount to a conversion. The last sentence in the excerpt being an explanation or modification of the first, the omission is apparent; but we do not think that the charge was thereby rendered erroneous. If this instruction had been given in the abstract, so as to refer to the *owner's* right, and not to the "plaintiff's right," and to "plaintiff's possession," and had not stated that under the conditions embraced therein the "plaintiff" could recover, we should have no hesitancy in upholding it under the decisions in *Merchants & Miners Transportation Co.* v. *Moore,* 124 *Ga.* 482 (1) (52 S. E. 802), and *Roper Wholesale-Grocery Co.* v. *Faver,* 8 *Ga. App.* 178 (2) (68 S. E. 883). If the plaintiff's title had been conclusively established, the court then could very well have instructed the jury that "if the defendants did any act negativing or inconsistent with plaintiff's possession," the plaintiff could recover, without reference to the wrongful character of the act; for in that case the only issue would be one of conversion, and such act, if committed, would necessarily be wrongful. There is no exception, however, upon the ground that this excerpt improperly assumed the plaintiff's ownership, and under this assumption the charge was not erroneous. This is not to intimate that other assignments in this connection might have been sustained, since it appears, by an examination of the general charge, that the jury were fully informed that the plaintiff could not recover unless he sustained his claim of title.

7. The court charged the jury as follows: "Defendants claim that this car was sold by John M. Smith Company to Morris Miller, that this car was stolen from the possession of Morris Miller, that an insurance company of which defendants were agents paid the loss under provisions of a theft policy theretofore issued by such insurance company to Morris Miller, and that at or about the time of such payment the insurance company took from Miller a contract subrogating the insurance company to the rights of Miller, if he had any rights in this car. The right of subrogation does not exist until there arises a legal duty to pay a loss on the part of the person or corporation claiming to be subrogated. The right of subrogation would give to the insurance company just such right, or the person acting for it, such rights in the car as Morris Miller had. The burden would be upon the defendants, on the issue of

subrogation, to show that the car was stolen and that thereby the insurance company became liable to pay the loss." It is assigned that this charge is error "because the evidence shows that the insurance company paid Miller $1450, taking from Miller an assignment of his entire right, title, and interest in the automobile. Movant contends that the insurance company thereby became vested with the full legal title to the automobile, and that this title was not affected in any way by the fact as to whether the automobile had been stolen or not, and likewise was not dependent upon the question as to whether the insurance company was under a legal obligation to pay Miller's loss or not. Movant contends that the insurance company had a right to pay Miller and acquire title to the car, and that its title thus acquired was not affected by the truth or falsity of Miller's representations as to the loss of the car, and it was therefore error for the court to charge that the burden would be upon the defendants to show that the car was stolen, and that thereby the insurance company became liable to pay the loss."

There is no exception upon the ground of a misstatement or of an insufficient statement of the defendants' contentions, nor is there an assignment upon the failure of the court to instruct the jury in reference to the insurance company's claim based upon the stipulation whereby Miller, in consideration of the payment of the loss, expressly invested the insurance company with the title to the automobile. There was no harmful error in the charge for any reason assigned, since the insurer did not acquire title either by subrogation or conveyance, unless the automobile had been stolen, and since the charge instructed the jury that "the right of subrogation would give to the insurer just such right, or the persons acting for it, such rights in the car as Morris Miller had." While the insurance company would have had the right to obtain the title to the automobile by express conveyance irrespective of subrogation (see *Irvin* v. *New Brunswick Fire Ins. Co.*, 32 *Ga. App.* 182, 122 S. E. 710), the paper which it took for that purpose conveyed nothing if the car had not been stolen but had previously been sold and conveyed by Morris Miller to some one else. So that, whether the insurance company claimed by an express conveyance or by the right of subrogation, legal or conventional, the burden was upon the defendants to establish that the car was stolen, in order to maintain the defense that the title thereto was in the insurance

company. There is no cause for a new trial in the assignments upon the above excerpt.

This and the other rulings made above are controlling of an assignment upon a further excerpt from the charge of the court, as made in the fourth and only remaining ground of the amendment to the motion for a new trial.

8. The evidence authorized the verdict and for no reason urged was it error to overrule the motion.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*