24470.   JARECKY *et al. v.* ARNOLD, administrator.

DECIDED OCTOBER 2, 1935.   REHEARING DENIED OCTOBER 5, 1935.

*W. A. Slaton,* for plaintiffs in error.   *C. E. Sutton,* contra.

STEPHENS, J.   C. S. Arnold as the administrator de bonis non of the estate of B. C. Arnold, brought suit against C. J. Arnold and A. H. Jarecky on a promissory note for $10,000 on which there was a balance due of $1500, besides interest and attorney's fees.   C. J. Arnold filed an answer admitting the execution of the note.   For further answer he said that he was an heir at law of B. C. Arnold; that the only debt due by the decedent at the time of his death had been paid; that he left surviving him a widow, Mrs. Sarah F. Arnold, and six children, one of whom had since died, thus leaving five heirs at law; that a year's support of $1000 had been set apart to the widow, and she was entitled to one fifth part of the balance of the estate; that, so far as the defendant knew, the estate consisted only of this note on which $9744.84 had been paid, out of which sum various payments had been made to the widow and children of B. C. Arnold; "that this defendant's interest in said estate is the sum of $1333; and that there are no

debts to be paid, and this defendant is entitled to set off the amount due him against this note, and this defendant has received no part of his interest in said estate." A. H. Jarecky answered, admitting the execution of the note and that it was past due and unpaid. For further answer he said that the estate of B. C. Arnold owed no debts, that C. J. Arnold had received no part of his interest in the estate, that C. J. Arnold was entitled to set off his interest in the estate against the note, and that C. J. Arnold had assigned to this defendant his interest in the estate. He prayed that the set-off be allowed, and the balance only, if any, due on the note be adjudged to be due and payable by him. On the trial, after evidence had been presented, the defendants made a motion to mold the verdict and judgment so as to recite that C. J. Arnold was an heir of B. C. Arnold; that his interest in the note sued on was approximately $1300; that all the other heirs except one had received $1033.33; that this defendant had received no sum whatever from the estate; that the plaintiff had tendered evidence which might be construed to prove that $4000 in liberty bonds and $5688 in cash, found in the residence at the time of the death of B. C. Arnold, were the property of B. C. Arnold, and might be construed to prove that the property was the property of Mrs. Sarah F. Arnold; that any liability which might be due by C. J. Arnold to the estate "would be a liability growing out of transactions involving the use of said fund, and not out of a liability for the use of the note in suit or its proceeds, . . that the issues are such that it is impossible to determine these questions absolutely in this litigation, because other persons are involved in them, and that such determination can not be made until after the conclusion of such litigation, if any, is concluded." This motion concluded by praying that the verdict and judgment be molded so that the defendants be not required to pay to the administrator any sum until the estate of B. C. Arnold is disposed of, and a final determination had of the exact interest of C. J. Arnold in the same, and that set-off be allowed of the sums due C. J. Arnold as an heir at law as of the date on which payments were made to the other heirs at law, in order to do equal and exact justice between them. This motion was evidently based on the Code of 1933, §§ 37-1203, 110-106. The court overruled the motion, and the defendants excepted.

The most material portions of the evidence were as follows:

C. J. Arnold testified: "At the time of my father's death this note was in his trunk. There was also $5688 in cash and $4000 in bonds in the trunk. I deposited $4000 in coupon bonds and the cash in the Bank of Wilkes; and then later I bought with the $5688, I bought $4500 in registered bonds; those were put in my mother's name. Then I took the bonds out of the trunk and had those registered in my mother's name." He further testified, as to the amounts collected by him on the $10,000 note sued on which aggregated $7744.84, that he deposited this amount in bank in Mrs. Sarah Arnold's account and bought with that money $6500 in bonds which were registered in his mother's name, making a total of about $15,000 in bonds; that, later, considerable cotton contracts were bought in Augusta, on which there were losses; and that the first cotton contract of 200 bales was bought October 30, 1930. He further testified: "I made arrangements with Jarecky that mother was to put up $6000, and he was not to call on her for any more money, and carry the 200 bales as long as she pleased. That cotton cost around $10,000. In order to buy that cotton, $5950 cash was put up by Jarecky. I think they put it to my credit, and I sent Jarecky my check. Possibly all of that $5950 was lost." C. J. Arnold further testified that the money which he took out of his father's trunk was his mother's money, that the title to the farm was in the mother, and that the net loss on the cotton trades was around $8000. There was detailed evidence with regard to a subsequent purchase or purchases of cotton and losses thereon, which seemed to have been handled in the main by W. B. Arnold a brother of C. J. Arnold; as to certain financial dealings of B. C. Arnold, the payments made to all of the heirs of B. C. Arnold except C. J. Arnold, and other matters which seem to have little bearing on the case. It appeared that C. J. Arnold was a partner with Jarecky in the firm of A. H. Jarecky & Company, who borrowed from B. C. Arnold the $10,000 for which the note sued on was given. B. C. Arnold died in January, 1930. No administrator was appointed on his estate until October, 1931, at which time Mrs. Sarah F. Arnold was appointed administratrix and remained such until her death in August, 1933. She made no returns to the court of ordinary. After her death C. S. Arnold was appointed administrator de bonis non.

■ The first assignment of error is that the court erred in over-

ruling the defendant's motion to have the verdict and judgment molded so that the defendants be not required to pay the administrator any sum until the estate of B. C. Arnold is disposed of and a final determination had of the exact interest of C. J. Arnold in the same, and that a set-off be allowed of the sums due C. J. Arnold as an heir at law. The defendants had set up in their answer that the interest of C. J. Arnold in the estate of B. C. Arnold was the sum of $1333, and that this defendant was entitled to set off the amount due him against the note. The sole issue in the case was whether C. J. Arnold had an interest in the estate; and if so, what was the amount of it. This defendant had elected to raise that issue in the suit on the note. If it were for any reason better for him to have that issue determined in some possible later litigation, he should not have precipitated its determination by pleading the set-off. He could even have withdrawn his plea and suffered a judgment against himself, if he wished to avoid a trial of the only issue raised by him. As there was a competent court and jury ready to try the truth of his only defense, why should the trial of it be deferred to the indefinite future? It would be an anomaly for the court to mold a verdict or judgment so as to make it binding only to the extent that some later verdict or judgment might determine. It was not error to overrule this motion.

■ Error is assigned on the action of the court in entering an order nunc pro tunc, striking the answer of Jarecky because he introduced no evidence to support the allegation that he had a written assignment of C. J. Arnold's interest in the estate of B. C. Arnold, and directing a verdict in favor of the plaintiff against Jarecky for the amount sued for. The court did not instruct the jury to find against Jarecky the full amount sued for, but did instruct them as follows: "In so far as the defendant A. H. Jarecky is concerned, I am going to direct a verdict in favor of the plaintiff against him for such amount as you might find to be due on this note by C. J. Arnold. So you will not be concerned about Mr. Jarecky. You will be concerned solely in this case with whether or not Mr. C. J. Arnold, one of the defendants, is indebted to the estate of B. C. Arnold on this note." It thus appears from the record that the judge stated during the trial that he would strike the answer of Jarecky, but did not do so, and finally charged the jury to find against Jarecky such amount as they might find to be

due on the note by C. J. Arnold. This court can not hold that the jury was at liberty to reject this part of the charge because of a previous announcement by the trial judge that he would strike the answer of Jarecky. No order to that effect was taken before the verdict, and the entering at a later term of the nunc pro tunc order could not invalidate the trial.

■ The first special ground of· the motion for a new trial alleged that the court erred in overruling the defendants' motion to rule out the testimony of various witnesses regarding the asportation and disposition by C. J. Arnold of $5688 in cash and $4000 in bonds which were found in the trunk of B. C. Arnold at the time of his death. ·This motion was made after the evidence was closed, and was predicated on the contention that this evidence injected · into the case an issue not made by the pleadings. This contention is not sustainable. C. J. Arnold in his answer alleged, as a set-off to the note, that his interest in the estate of B. C. Arnold was the sum of $1333, that there had been a partial distribution to the other heirs, and that there were no debts to be paid. The effect of these allegations was that the estate owed him $1333. This was the only issue in the case. He raised it, and the burden was on him to prove his allegation. The evidence which he moved to exclude was relevant. If he had caused the estate to sustain a loss equal to or exceeding the balance due by him on the note, the estate would owe him nothing. The claim that there should have been some specific pleading on which to base the testimony and the charge of the court in relation to the money and bonds taken by C. J. Arnold from the trunk of his father, B. C. Arnold, is not sustainable. Under our system of pleading, as a general rule, no replication is allowed, but the case goes to the jury on the petition and the answer. Code of 1933, § 81-311 (Code of 1910, §§ 5647, 5651). In some cases the court may require the plaintiff to meet, by appropriate written pleadings, any new matter set up by the defendant in controverting the plaintiff's petition. Code of 1933, § 81-309 (Code of 1910, § 5633). In the present case there was no motion to require additional pleading by the plaintiff. See *Willis* v. *Sutton,* 116 *Ga.* 283 (3) (42 S. E. 526) ; *Beard* v. *White,* 120 *Ga.* 1018 (48 S. E. 400).

■ After the judge had announced that he would strike the answer of Jarecky and direct a verdict against him, the defendants'

counsel tendered in evidence a written assignment to Jarecky by C. J. Arnold of the latter's interest in the estate of B. C. Arnold, which was dated the day of the trial, and purported to be "in pursuance of" an assignment previously made. It was not error to exclude this paper. Assignment of a chose in action must be in writing. Code of 1933, § 85-1803 (Code of 1910, § 3653). It takes effect as of its date. The date of the alleged previous assignment was nowhere shown, nor was its absence accounted for. As a substitute for the alleged original assignment, this paper had no probative value. As an original assignment it was too late. Even if it were error to exclude this paper, it was harmless in view of the subsequent charge of the court considered in paragraph 2 above. This charge is alleged, in ground 3 of the motion, to have been error in that it cut off the jury from considering the set-off in finding against Jarecky. The charge can not be so construed.

■ Ground 4 of the motion complains of a part of the court's charge which related to the use by C. J. Arnold of property or money belonging to the estate of B. C. Arnold for making investments in cotton with consequent loss to the estate. The complaint is that that issue was not made by proper pleadings. This contention is sufficiently answered by what has been said in paragraph 3 above.

■ Ground 5 of the motion complains of the following charge: "It is contended by the plaintiff in this case that Mr. C. J. Arnold used sums of money belonging to the estate of Mr. B. C. Arnold to make certain investments in cotton, and losses occurred therefrom which more than consumed the interest of Mr. C. J. Arnold in the estate of his father. Now gentlemen, that is one of the issues you are to determine in the case. If you should believe, under the evidence in this case, that Mr. C. J. Arnold did use sums of money belonging to the estate of B. C. Arnold, deceased, which were in excess of any interest that he might have as an heir in this estate, why in that event I charge you that he would not be entitled to any set off, but in that event it would be your duty to return a verdict for the plaintiff for the amount due on the note." The complaint is that the charge was error, because it expressed an opinion on the facts by assuming that the money used by W. B. Arnold in purchasing cotton belonged to the estate of B. C. Arnold and was not the property of Mrs. Sarah Arnold, and because the

court did not give additional instruction to the jury to determine first the issue whether the cash and bonds were the property of B. C. Arnold or the property of Mrs. Sarah Arnold. No instructions on this point were requested. The charge as given distinctly predicated a rejection of the set-off upon the finding by the jury that the property belonged to the estate of B. C. Arnold. It was sufficient, in the absence of a request for a more detailed instruction.

■ Ground 6 complains that the court in charging the jury did not give them "proper and legal instructions" how to determine whether the cash and bonds were the property of the estate of B. C. Arnold, or the property of Mrs. Sarah Arnold. This complaint does not point out any instruction which would have been "proper and legal." In a case of this kind there are no rules by which the title to personalty can be determined. The evidence was largely if not wholly circumstantial, and in the absence of some proper request the court could only leave it to the jury to decide whether the money and bonds found in the decedent's trunk belonged to him or to his wife.

■ Ground 7 complains that the court erred in announcing, in the presence of the jury, that he would strike the plea of Jarecky, because no written assignment by C. J. Arnold had been made to Jarecky. It is alleged that this announcement was error prejudicial to the defendants, because it tended to cause the jury to believe that the court was of the opinion that the defenses set up were unfounded in fact. Many rulings of the court on points of law have to be made in the presence of the jury, regardless of their effect. When a ruling on a motion is about to be made which counsel fears may be damaging to his case, he may ask the court to let the jury retire. Any occurrence of a nature which violates the right to a fair trial can be urged as a ground for declaring a mistrial. In this case there was no request to retire the jury, and no motion for mistrial. The matter here complained of is not ground for a new trial.

■ The defendants, having admitted that they executed the note, that it was due, etc., assumed the burden of proving the substantive defense of set-off. The defense could prevail only by their showing, by a preponderance of the evidence, that C. J. Arnold was entitled to a distributive share of the estate. The Code of 1933,

§ 20-1307 (Code of 1910, § 4346), provides that an "owner of a distributive share in an estate may in equity set off the same against a judgment against the legatee or owner, unless special reason exists requiring the collection of the judgment." Whether C. J. Arnold had a right to set off his distributive share of the estate against the suit on the note, or not, he certainly had no right to do so unless the estate was solvent and in a condition to be distributed and he was entitled to a distributive share in it. *Dobbs* v. *Prothro*, 55 *Ga.* 73. If money belonging to the estate had come into his hands and been unaccounted for, it could be charged against his share in the estate. If this was in excess of the amount of the estate's claim against him, as represented in the note, and this claim is the only asset of the estate, he has already been paid his distributive share. The evidence authorizes the inference that the money and bonds which were taken by C. J. Arnold from his father's trunk were a part of the estate, and that funds derived therefrom in some way went to his benefit. The evidence authorizes the inference that approximately $6000 of this money went to his own firm, and was caused by him to be invested in cotton contracts and was lost. This is stated without attributing any wrong to C. J. Arnold, since he claims that the property belonged to his mother and that he used it with her consent. Of course if the money and bonds which he took from his father's trunk belonged to his mother and not to his father, C. J. Arnold, in so far as any of this money or these bonds went to his benefit, received nothing out of his father's estate which could be applied to his distributive share. In support of the set-off C. J. Arnold undertook to show that the money and bonds belonged to his mother. There was practically no evidence to support this contention. The statement of C. J. Arnold that the $5688 in the trunk was his mother's money is a mere conclusion or opinion upon the very question which was before the jury. It was not supported by any facts. Neither the money nor the bonds were traced from the mother's estate to their resting place in the trunk. The fact that the title to the farm was in the mother, without more, could hardly be held to overcome the presumption of title involved in the possession by the husband of the personalty in dispute. As to this presumption, see *Haas* v. *Godby*, 33 *Ga. App.* 218, 226 (125 S. E. 897), and cit. Therefore the evidence does not conclusively and as a matter of law establish the set-off. The verdict for the

962

plaintiff against both defendants was authorized, and no error appears. The court did not err in overruling the motion for a new trial.

*Judgment affirmed.* *Jenkins, P. J., and Sutton, J., concur.*