26763. WHEELER v. THE STATE.

ARGUED OCTOBER 13, 1971—DECIDED NOVEMBER 18, 1971—
REHEARING DENIED DECEMBER 1, 1971.

*Miles B. Sams,* for appellant.

*Lewis R. Slaton, District Attorney, Robert Ridley, Carter Goode, Joel M. Feldman, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, W. Hensell Harris, Assistant Attorneys General,* for appellee.

PER CURIAM. George Wheeler was indicted, tried and convicted of the offense of murder and was sentenced to life imprisonment. His motion for a new trial as amended was overruled, from which judgment he appeals.

■ Enumerated error 2, that the verdict was based on circumstantial evidence which did not exclude every other reasonable hypothesis save that of the guilt of the accused, will be considered along with enumerated error 1, the overruling of the motion for new trial.

The State's case was based upon the theory that the defendant alone shot and killed the decedent, Leo McElhaney, in a robbery attempt in the parking area of the Bellview Motel, situated at the corner of Auburn and Piedmont Avenues in Atlanta. The following evidence was adduced on the trial: At shortly before 9 on the night of January 19, 1971, two eyewitnesses heard three gunshots and saw the flashes therefrom, but nothing else, coming from the motel's parking area, their view of which was partially obstructed by a portion of the building. Thereafter, a man, identified by both eyewitnesses as the defendant, was observed in the motel driveway leading to Auburn Avenue, firing a pistol several times back in the direction of the parking area, into which a short time before the decedent had been seen driving his brother's automobile. One of the eyewitnesses testi-

fied that he had seen the defendant on several previous occasions and the identification was made in a well-lighted area, from 5 to 6 feet away. Later on, the two eyewitnesses and a police officer found the victim lying beside the automobile, with a small bullet hole in his left temple, which was the cause of his death on the following day. Immediately after the man was seen firing the pistol, he was observed by the two eyewitnesses running toward, then along, Piedmont Avenue, holding his chest with one hand and a pistol in the other. He was not pursued by anyone and no one else was seen in the parking area (except the decedent) or leaving the motel after the shooting. There is another exit from the parking area, which leads onto Piedmont Avenue, which exit was not visible to the two eyewitnesses from their vantage point in a cafe on Auburn Avenue across from the motel. The defendant was admitted to Grady Hospital for the treatment of a bullet wound in his chest some 45 minutes later, at approximately the same time that the decedent was admitted to that same hospital with the bullet wound in his left temple. Medical testimony showed that, hypothetically at least, the defendant might have been able to run some distance with a chest bullet wound. One witness testified that there was no doubt in his mind that the defendant fired the first shot. More than one gun was fired—a larger and a smaller one—but the man identified as the defendant was the only one observed firing a gun. The gun fired by the man identified as the defendant was tentatively identified by one of the eyewitnesses as a nickel plated .357 Magnum pistol, a six-shot weapon. More than six shots were heard fired. There was found no gun near the decedent or anywhere else. At the time he was shot, the decedent had on his person some $1,400, which his mother had given him with which to buy an automobile. His brother testified that the decedent knew he was being robbed when "they" were chasing him. He also testified that a Mr. Maloney—a dope pusher, a friend of the defendant, an enemy of the decedent, and one who set people up to be robbed—had waited at the hospital until 3:30 on the night

decedent was shot to see what the results would be, had identified the defendant in the hospital, and had been shot to death himself on the following day.

The defendant, sworn as a witness, denied being at the scene of the alleged murder, having a gun in his possession, and shooting the decedent. He testified that he left home on the night in question and was going to visit a friend in the Capitol Homes Apartments, off Memorial Drive (near the State Capitol Building). His wife testified that she had answered the telephone when said friend, whom she knew, called the defendant and that the defendant left home "sometime after dark" without a gun. The defendant further testified that, as he was walking along Memorial Drive between Pryor Street and Central Avenue, some 8 to 10 blocks from the scene of the crime, a dark colored Cadillac stopped, an unknown man inside accused him of "snitching" on him to the "Feds" (which he denied having ever done to anyone), then shot him in the chest. He stated that an unidentified stranger gave him a ride to Grady Hospital for treatment of the chest wound. He denied having ever seen eyewitness White or the decedent prior to the trial.

"The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." *Code* § 38-1805. "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. . ." *Code* § 38-1806. The jury was authorized to find that the defendant's testimony was at least successfully contradicted by the testimony of two eyewitnesses, placing him at the scene of the crime at the time of its commission. "The rule as to the sufficiency of circumstantial evidence to support a conviction is that the evidence exclude every reasonable hypothesis except the guilt of the accused, *not that it removes every possibility of his innocence. John v. State,* 33 Ga. 257, 268; *Farrar v.*

*State,* 110 Ga. 256 (34 SE 288); *Williams v. State,* 204 Ga. 837, 842 (51 SE2d 825); *Graves v. State,* 71 Ga. App. 96, 99 (30 SE2d 212)." (Emphasis supplied). *Eason v. State,* 217 Ga. 831, 840 (125 SE2d 488). "Whether dependent upon positive or circumstantial evidence, the true question in criminal cases is, not whether it be *possible* that the conclusion at which the evidence points *may* be false, but whether there is sufficient evidence to satisfy the mind and conscience beyond a *reasonable* doubt." (Emphasis supplied). *Code* § 38-110. The defendant's flight from the scene of the crime, together with the other circumstances in evidence set out hereinabove, was sufficient to convict him. *Diggs v. State,* 90 Ga. App. 853, 858 (84 SE2d 611), citing *Sheffield v. State,* 1 Ga. App. 135 (2) (57 SE 969). Therefore, the court did not err in its judgment overruling the general grounds of the motion for new trial.

■ Enumerated error 3 is the court's failure to charge, without a request therefor, on alibi. The court charged as follows: "If the homicide was, in your opinion, unlawful and was committed by the defendant and you believe that beyond a reasonable doubt *that he was present at the time and place of the killing* and did commit the offense alleged, it would be your duty to find the defendant guilty of the crime of murder. He denies his guilt and *denies his presence at the time and place of the actual killing.*" (Emphasis supplied). "It is the duty of the trial court to charge the contentions of the parties where supported by evidence; and although in a criminal case it is proper to charge as to the contentions of the defendant without request, it is not required when the same are supported only by the defendant's statement." *Wilson v. State,* 215 Ga. 672, 676 (113 SE2d 95) and cit. In the absence of a request for a more specific charge on alibi, the above instruction, together with one to the effect that the defendant's not guilty plea placed upon the State the burden of proving beyond a reasonable doubt the guilt of the accused, was adequate.

The court did not err in its judgment overruling the motion for new trial as amended.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting. I dissent from the affirmance of the judgment overruling the general grounds of the motion for new trial.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." *Code* § 38-109; *Graham v. State*, 183 Ga. 881 (189 SE 910); *Sentell v. State*, 227 Ga. 153 (179 SE2d 234). "In determining whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted. *Redwine v. State*, 207 Ga. 318, 324 (61 SE2d 481)." *Sentell v. State*, supra, p. 156. The defendant's testimony, that he was on his way to his friend's apartment, is supported, to some extent at least, by his wife's testimony that the friend called him shortly before he left home, on foot and without a gun. The fact of his chest wound and its treatment at the hospital, was supported by evidence. Although much of the rest of the defendant's explanation was unsubstantiated, nevertheless, it is consistent with the other circumstantial evidence properly admitted, with the exception of the identification of the defendant as the one seen fleeing the murder scene. Of the two eyewitnesses, one had never even seen the defendant prior to the time he claimed to have seen him on the night in question and the other one claimed to have seen the defendant on several occasions, but the defendant denied having ever seen him. Although the identifications were made from a fairly close distance in a lighted area, they were, nevertheless, made at night; the dark skin of the man allegedly identified, plus the facts, that he was running at the time and that the identifiers knew the defendant only casually (if at all) and not at all, respectively, might render a positive identification very difficult, even without any consideration of the eyewitnesses' credibility.

Even if the jury found, as it evidently did, that the defendant's testimony had been successfully impeached, or that he had sworn wilfully and knowingly falsely, so that his testimony was disregarded entirely pursuant to the provisions of *Code* § 38-1806, however, this fact alone did not provide the affirmative, substantive evidence which would carry the State's burden of proof or authorize the defendant's conviction. *Substantive facts are not shown or established by impeaching evidence; it leaves the situation as though the witness had not testified. Central R. & Bkg. Co. v. Maltsby,* 90 Ga. 630 (4) (16 SE 953); *Ga. R. & Bkg. v. Andrews,* 125 Ga. 85, 87 (54 SE 76); *Stallins v. Southern R. Co.,* 140 Ga. 55, 57 (78 SE 421); *Haas & Howell v. Godby,* 33 Ga. App. 218, 227 (125 SE 897); *Brown v. Sheffield,* 121 Ga. App. 383, 388 (173 SE2d 891). See also *Young v. State,* 225 Ga. 255, 258 (167 SE2d 586); 58 AmJur 421, Witnesses, § 770. "In criminal cases, the law requires that the State shall prove *all the essential facts entering into the description of a crime,* and, except in a very few special cases, the defendant cannot be put upon his defense, until the State has shown affirmatively *every such fact.*" (Emphasis supplied). *Conyers v. State,* 50 Ga. 103, 105; *Swint v. State,* 203 Ga. 430 (5) (47 SE2d 65). "In a criminal case the burden is on the State to prove the guilt of the defendant beyond a reasonable doubt, and the burden never shifts to the defendant to prove his innocence." *Chalker v. State,* 99 Ga. App. 278 (1) (108 SE2d 178). "[W]hen the evidence of guilt is entirely circumstantial, *each separate fact or link which goes to make the chain of circumstances must be clearly proved.*" Green, Ga. Law of Evidence, § 22, p. 79, n. 134, citing *Gravett v. State,* 150 Ga. 74 (3) (102 SE 426) and *Code* § 38-109. "A mere scintilla of inconclusive circumstances, giving no scope for legitimate reasoning by the jury, does not carry the burden." Green, op. cit., § 22, p. 87, n. 169, citing *Ga. R. &c. Co. v. Harris,* 1 Ga. App. 714 (57 SE 1076). "'Where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and human-

ity of the law compel the acceptance of the theory which is consistent with innocence.' *Davis v. State,* 13 Ga. App. 142 (1) (78 SE 866); *Rutland v. State,* 46 Ga. App. 417, 422 (167 SE 705)." *Scroggs v. State,* 94 Ga. App. 28 (93 SE2d 583).

Under the principles above stated, I do not believe that the State carried its burden of proof of the defendant's guilt beyond a reasonable doubt. Certainly, the evidence of his mere presence at the scene of the crime at the time of its commission was not sufficient proof of his guilt. Even if he fired the first shot, as one witness concluded, this does not demand the finding that it was fired at the decedent, or that it was the fatal shot, or that any of his subsequent shots killed the decedent. The evidence raised the strong probability, if it did not demand the finding, that a party or parties other than the defendant and the decedent were involved in the occurrence. Since there was no evidence that the defendant shot himself in the chest, someone else probably did it. There was found no gun near the decedent or anywhere else, so apparently the decedent did not shoot the defendant. That another gun was used, is shown not only by the fact that the defendant was shot, but also by the additional facts, that more than 6 shots were heard and the defendant's pistol held only 6 bullets, and that a large pistol and a smaller one were heard firing. If other parties were involved, then, as it is reasonable to assume, it is just as reasonable to assume that such other party or parties might have shot the decedent, as well as the defendant. This would explain why no gun was found on the scene. This might show also that the defendant, in firing toward the parking area, was firing, not at the decedent, but at such other parties. The defendant's own wound might indicate that his firing was done in self-defense. This being a possibility, his flight from the scene, rather than being evidence of his guilt, could be interpreted as a flight from the gunman who shot him. "The circumstance of flight by the accused after a crime has been committed is only a circumstance which the jury may consider along with all other

circumstances 'not sufficient in itself to establish guilt' but as tending to show the accused's motive, state of mind, etc." Green, op. cit., § 253, p. 543. As to the evidence that no one else was observed leaving the scene, the evidence shows that there was another exit from the parking area, leading onto Piedmont Avenue, from which someone might have escaped without being seen from the cafe on Auburn Avenue across from the motel, from which cafe both eyewitnesses observed the occurrence. It also would have been possible for someone to escape through an entrance to the motel from the parking area before the eyewitnesses got close enough to see around the obstruction that blocked their view of what actually occurred in the parking area. This theory is further strengthened by the decedent's brother's testimony, that the decedent knew he was being robbed when "they" (rather than *he*) were chasing him, and his testimony concerning Maloney (the dope pusher, enemy of the decedent, friend of the defendant—who set people up to be robbed). There is no evidence affirmatively showing that the defendant even knew that the decedent had the money on his person. On the other hand, the evidence showed that the money was not taken, but was found still on the decedent's person after he was shot. Although the defendant's gun was tentatively identified by one of the eyewitnesses as a nickel plated .357 Magnum pistol (based upon his brief glimpse of it plus his having heard it fired), the State not only failed to produce this gun in evidence or prove that the defendant owned or had possession of such a weapon, but also failed to show what size bullets killed the decedent and caused the defendant's chest wound.

In short, the circumstantial evidence relied on solely in this case, did not clearly prove each separate link which goes to make the chain of circumstances, so as to exclude every other reasonable hypothesis save that of the guilt of the accused; to the contrary, it presented, along with a theory of guilt, a theory (supported by more than mere possibility) consistent with the accused's innocence. The State not having carried its burden of excluding every other rea-

sonable hypothesis save that of the guilt of the accused, the jury should not have been allowed and required to speculate on the inconclusive circumstances, which equally support the theory of innocence, the acceptance of which theory is compelled by the justice and humanity of the law.