## 30594. PULLIAM v. THE STATE.

INGRAM, Justice.

Appellant was convicted by a jury in the Superior Court of Troup County for the offenses of murder and armed robbery. He received a death sentence for the crime of murder and a sentence of life imprisonment for the armed robbery. This appeal considers appellant's enumerations of error and a review of the death sentence imposed in this case, as the trial court overruled appellant's motion for a new trial.

### Summary of the Evidence

The state presented evidence from which the jury could find the following:

On Sunday, March 9, 1975, the appellant, Jessie Lewis Pulliam, and Willie Joe Harris "talked about calling a cab and we was going to shoot him and rob him." About dark, the appellant called a Wadkins Cab. James L. Johnson, a driver for Wadkins Cab Company, responded to the call and picked up appellant and his companion, Willie Joe Harris, at Givens' Store in Lanette, Alabama. "We told him to take us to the club across I-85. This was where we planned to shoot and rob him. The cab stopped on Cherry Drive and picked up another man and carried him to the water works in West Point. Then he carried us to the [Elks] club. When we got there, the club was closed. Then we told him to take us to the project in West Point, over in Pine Ridge. When the cab got to the Coca-Cola Plant, Willie Joe shook his head and I thought he couldn't do it and Willie Joe handed me the gun. When we got up by the school, that's when I fired. I remember firing twice. Willie Joe got out of the car and went around on the other side and picked the man up and I was holding him and Willie Joe went in his pockets and got the money." (From appellant's written confession).

Harris took the money that the cab driver Johnson had on his person and gave appellant two five-dollars bills and some change. The victim was found slumped over in the front seat of his cab in West Point, Troup County, Georgia, by a passerby and the police were alerted. The victim died several days later as a result of the gunshot wound made by a bullet which entered the victim's head

behind his ear on the left side.

Appellant was arrested a few hours after the cab driver, James Johnson, was shot. At the time of his arrest, the pistol from which the fatal shot was fired fell out of appellant's trousers. Appellant presented evidence that during his incarceration he had "fits." The defendant testified that Willie Joe Harris gave him some money and the pistol and told him to stick the pistol in his pants. He testified the gun belonged to his mother but that Willie Joe Harris had stolen it. Appellant also testified that he has had "fits" (epileptic seizures) since age seven.

## Sufficiency of Evidence

In his first enumeration of error, appellant urges the general grounds, to wit, that the verdict is contrary to law and the evidence, and is strongly against the weight of the evidence.

In support of this contention, appellant argues that the evidence was circumstantial and does not exclude every reasonable hypothesis except guilt. He relies on *Diggs v. State,* 90 Ga. App. 853 (84 SE2d 611) (1954); *Pitts v. State,* 17 Ga. App. 836 (88 SE 712) (1916); and *Wheeler v. State,* 228 Ga. 402 (185 SE2d 900) (1971). The facts of these cases and the present case are significantly different. The evidence is not all circumstantial in this case. When arrested, appellant had on his person a pistol. The evidence indicates a bullet fired from that pistol caused the death of the cab driver. In a pre-trial statement, appellant confessed to shooting the victim and holding him up while his partner in crime, Willie Joe Harris, went through the victim's pockets and took his money which he divided with appellant. In our opinion, the evidence is legally sufficient to support the jury's findings of guilt. See *Lindsey v. State,* 234 Ga. 874, 876 (218 SE2d 585) (1975).

## Continuance

Appellant urges in his second enumeration of error that the trial court erred in not granting his motion for a continuance of the case for trial to the November, 1975, Term. The trial took place in August, 1975.

Appellant was arrested on March 10, 1975, and arraigned on May 9, 1975. Appellant's counsel was retained in June prior to the death of the former district

attorney, the Honorable Eldridge W. Fleming, on June 13, 1975. Prior to that time, but during June, appellant's counsel contacted Mr. Fleming about the possibility of having his client examined by a psychiatrist at Central State Hospital, in Hardwicke, Georgia. District Attorney Fleming indicated that he would not oppose a motion for such an examination if Dr. Majors, a local physician, recommended an examination at Central State Hospital. Appellant's counsel acknowledged that he knew Dr. Majors had examined appellant but contends he never received a written report by Dr. Majors which did not recommend an examination of appellant at Central State Hospital.

The present district attorney, who was appointed June 19, 1975, and tried the case on behalf of the state, reported that Dr. Majors did not recommend sending appellant to Central State Hospital and that appellant's counsel had not contacted him about a continuance. Appellant did not subpoena Dr. Majors to testify nor did he make any timely effort to seek private consultation. On August 8, 1975, defense counsel sought a continuance on the ground that he had not had an opportunity to have appellant examined by a psychiatrist. Appellant offered no evidence to support his assertion that "we had a question here as to whether or not the defendant is capable of standing trial at this time."

A motion for continuance, pursuant to Code Ann. § 27-2002, is addressed to the sound discretion of the trial court. We find no abuse of discretion by the trial court that would justify our reversal of the trial court's judgment. See *Domingo v. State,* 211 Ga. 691 (88 SE2d 1) (1955); *Harris v. State,* 211 Ga. 327 (85 SE2d 770) (1955); and, *Griffin v. State,* 208 Ga. 746 (69 SE2d 192) (1952).

Juror Selection

Appellant insists the trial court erred in excluding potential jurors who had conscientious objections to capital punishment.

In our examination of the voir dire transcript, we find that four prospective jurors were excused for cause based on scruples against imposition of the death penalty. Each juror excused had expressed unalterable opposition to capital punishment under all circumstances.

The opposition of the excused jurors comports with the standards of jury selection applicable in death cases set forth in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1967); Boulden v. Holman, 394 U. S. 478 (89 SC 1138, 22 LE2d 433) (1968); and, Maxwell v. Bishop, 398 U. S. 262 (90 SC 1578, 26 LE2d 221) (1969). See, also, *Owens v. State,* 233 Ga. 869, 871 (214 SE2d 173) (1975); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Simmons v. State,* 226 Ga. 110 (12) (172 SE2d 680) (1970); and, *Dobbs v. State,* 236 Ga. 427 (1976). We find no violation of the Witherspoon standards in this case.

## Admissibility of Confession

Appellant argues, in enumeration of error No. 4 that, "The court erred in admitting into evidence the alleged confession of the defendant." Prior to admission of the appellant's pre-trial confession the trial court held a hearing out of the presence of the jury in compliance with Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). The evidence indicated that appellant was arrested on a warrant, unchallenged by appellant, for armed robbery and attempted murder. At the time of his arrest, on March 10, 1975, appellant was advised of his constitutional rights as required by Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

In the Jackson v. Denno hearing, Lt. Carmack of the West Point, Georgia, Police Department, testified that he had a conversation with appellant on March 19, 1975, in which he again advised appellant of his Miranda rights. Lt. Carmack testified that no promise of reward was offered to appellant to induce a statement and no threat to harm appellant was made if he did not make a statement. Appellant voluntarily confessed to Lt. Carmack, and his confession was then reduced to writing and signed by appellant. On the other hand, appellant testified that he was tricked into making the statement and that he was never informed by Lt. Carmack of his right to remain silent and of his right to counsel. Later, before the jury, there was testimony of a third warning given to appellant at the jail on the morning of March 10, 1976.

These warnings fully complied with Miranda v. Arizona, supra, and the renewed warning to appellant on the 19th of March would have been sufficient in the

absence of the earlier warnings on the 9th and 10th of March. See Michigan v. Mosley, ——U. S.—— (96 SC 321) (1975). The trial court resolved the conflict in the evidence in favor of the admissibility of the confession in the jury trial and his decision is supported by a preponderance of the evidence. See Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972); *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974); and, *Brown v. State,* 233 Ga. 171 (210 SE2d 706) (1974). We find no merit in this enumeration of error.

## Mistrial

Appellant also contends, "The court erred in not declaring a mistrial due to the appeal to the emotions of the jury by the district attorney." Appellant relies on four occurrences during the trial as improper appeals to the emotions of the jury. The first occurrence complained of was during the Jackson v. Denno hearing. The jury was not present and the questions complained of were not objected to by defense counsel. The second occurrence was during cross examination of appellant about what he said in his confession. Four times the district attorney, referring to apparent conflicts between the testimony of appellant and the testimony of Lt. Carmack, asked appellant if Lt. Carmack was lying or not telling the truth. The last time the district attorney asked, "And all that he [Lt. Carmack] says is a lie and all you say is the truth, is that correct?" A. "Yes, he is," to which appellant's attorney objected. The trial court sustained the objection. When appellant's attorney asked to have the district attorney admonished and asked for a mistrial, the trial judge overruled the motion for mistrial but admonished the district attorney that, "There are other ways of approaching the question other than calling him a liar." No objection was made to the additional remarks of the district attorney during his final argument on the guilt or innocence phase of the trial.

During the sentence phase of the trial, the only objection pertinent to this enumeration of error was directed to the district attorney's statement, "This man showed an attitude that he cannot be rehabilitated. Now [sic] only does he say he didn't do it . . . and he actually gets on the stand and says . . . he has the unmitigated gall to

call an underpaid law enforcement officer here in this county a liar and accuses this man of framing him." Appellant's objection was sustained but his motion for a mistrial on this part of the trial was overruled.

Where appellant asserts error and no objection is made at the trial it cannot be made the basis of appellate review, either as a ground of a motion for new trial, or as a ground of enumerated error on direct appeal. *Hart v. State,* 227 Ga. 171 (179 SE2d 346) (1971). In those instances complained of where objection was made and error is asserted, the trial court sustained the objection of the appellant and in one instance admonished the district attorney.

We hold the trial court did not abuse its discretion in refusing to grant a mistrial under the facts of this case. See *Shy v. State,* 234 Ga. 816 (218 SE2d 599) (1975); also, *Washington v. State,* 87 Ga. 12 (13 SE 131) (1891); *Hammon v. State,* 51 Ga. App. 225 (179 SE 841) (1935); and, *Brooks v. State,* 55 Ga. App. 227 (189 SE 852) (1937).

Requested Charge to Jury

In enumeration of error No. 6, appellant contends the trial court erred in its refusal to give to the jury instructions requested by appellant at trial. The first requested instruction was on voluntary manslaughter. Appellant stated in his confession that he shot the victim to rob him, but at the trial appellant testified he did not shoot the victim. Under either theory there is no evidence to authorize a charge on voluntary manslaughter. *Meadows v. State,* 230 Ga. 471 (197 SE2d 698) (1973).

The second, third and fourth requested instructions dealt with insanity and delusional compulsion. There was some evidence indicating that the appellant suffered from epilepsy. In his pre-trial confession, the appellant makes no mention of seizures. At the trial appellant testified that he had a hangover, and someone gave him a cigarette with marijuana in it. When the cab driver asked him why he was so nervous, he said, "I just told him about that epileptic I had." . . . "I told the taxi driver to take me home, I think I going to have a seizure, he said okay." He did not testify that he in fact had a seizure and appellant testified that he remembered a shot being fired but denied that he was the one who shot the cab driver.

Appellant's defense at trial was not based on insanity but one of denial of guilt. Under these circumstances, where the evidence did not raise these issues during the trial, it was not error for the trial court to decline to charge on them. See *Pass v. State,* 227 Ga. 730, 739 (182 SE2d 779) (1971); *Cash v. State,* 224 Ga. 798 (164 SE2d 558) (1968); *Garrett v. State,* 126 Ga. App. 83 (189 SE2d 860) (1972). See *Graham v. State,* 236 Ga. 378 (1976), on delusional compulsion.

In his final enumeration of error, appellant urges that the trial court erred in failing to rule that the new Georgia statute authorizing the jury to impose the death penalty under standards prescribed by the statute is unconstitutional. The Georgia Death Penalty Statute was upheld by this court against a similar constitutional attack in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974) and other attacks on the constitutionality of the Act were rejected by this court in subsequent cases. *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Floyd v. State,* 233 Ga. 280, 284 (210 SE2d 810) (1974); *McCorquodale v. State,* 233 Ga. 369 (11) (211 SE2d 577) (1974); *Hooks v. State,* 233 Ga. 149 (3) (210 SE2d 668) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); and, *Dobbs v. State,* 236 Ga. 427, supra. We adhere to those rulings in this case.

Sentence Review

In our sentence review we have considered the aggravating circumstances found by the jury and the evidence concerning the crime introduced in court.

We have reviewed the sentence as required by Ga. L. 1973, p. 159, et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in *Coley v. State,* 231 Ga. 829, supra, and each subsequent case involving the death penalty under this statute. We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the jury's finding of statutory aggravating circumstances; i.e., that the offense of murder was committed while the offender was engaged in another capital felony (armed robbery), Code Ann. § 27-2534.1 (b) (2) and the defendant committed the offense of murder for the purpose of receiving money and other things of

monetary value, to wit, $16 in United States currency. Code Ann. § 27-2534.1 (b) (4).

We have compared the evidence and sentence in this case with similar cases contained in the appendix attached to this opinion. Jessie Lee Pulliam's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED JANUARY 13, 1976 — DECIDED FEBRUARY 24, 1976 — REHEARING DENIED MARCH 11, 1976.

*Allison W. Davidson,* for appellant.

*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

Similar Cases Considered by the Court: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Watson v. State,* 229 Ga. 787 (194 SE2d 407) (1972); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975).

ON MOTION FOR REHEARING.

Appellant has filed a motion for rehearing on two grounds. First, he contends that the opinion "failed to state how the state met the standard of the *Witherspoon* case . . ." This issue was treated in the third Division of the opinion and is summarized in this sentence from p. 7 of it:

"Each juror excused had expressed unalterable opposition to capital punishment under all circumstances." This authorized the recuse of these prospective jurors in the case.

The second ground of the motion urges that appellant's contention, that he did not make a voluntary statement, was not considered by the court. This contention was specifically considered in the fourth Division of the opinion. As stated on p. 9, "The trial court resolved the conflict in the evidence in favor of the admissibility of the confession in the jury trial and his decision is supported by a preponderance of the evidence."

*Motion for rehearing denied. All the Justices concur, except Gunter, J., who dissents.*