### 38593. RIVERS v. THE STATE.

HILL, Chief Justice.

Hill Rivers was indicted by the Grand Jury of Burke County, Georgia, on one count of burglary, two counts of murder, two counts of armed robbery, and two counts of kidnapping with bodily injury. Since the state sought the death penalty on the two counts of murder, the trial was conducted pursuant to the Unified Appeal Procedure, 246 Ga. at A-5 (1980), and this appeal is reviewed pursuant to that procedure. The jury returned guilty verdicts on all seven counts and sentences of death on each of the two murder counts. The judge sentenced the defendant to 20 years for the burglary and to life terms for each of the remaining four counts, with all five sentences to be served consecutively. The defendant appeals.

The state's theory of the case was that Alan Reeves and his friend Alan Shirley drove up to Reeves' home in the early evening of July 3, 1981, while the defendant was burglarizing it. The defendant gained possession of Reeves' .357 magnum which was in the truck he was driving and used it to march Reeves and Shirley into a nearby cornfield where he shot each of them in the head, causing their deaths. The state presented the following evidence.

The victims spent July 3, 1981, barbecuing a hog at Alan Reeves' parents' home. At approximately 7:00 p.m., they drove to the home of Reeves' sister and her husband, Deborah and Doug Ide, to invite

them to dinner. While the victims were at the Ides, Doug Ide noticed Alan Reeves' .357 magnum pistol, holster, and a box of cartridges on the front seat of Alan Reeves' truck. The Ides' home is approximately 1/4 mile down Highway 56 from the elder Reeves' home; Alan Reeves' home was approximately 1/4 mile in the opposite direction on Highway 56 from his parents' home. Alan Reeves was in the process of moving out of his parents' home as he was engaged to be married. When the victims left the Ides between 7:20 and 7:30, Doug Ide agreed to meet them at Alan Reeves' home in about 15 minutes.

Doug Ide arrived at Alan Reeves' home at 7:35 or 7:40 p.m. Reeves' truck was parked in the backyard. Ide had been outside the back of Reeves' home at about 6 p.m., at which time the house had been undisturbed. When he arrived after 7:30, he observed that the glass in the back door had been broken and articles that appeared to be frozen food were strewn around the back yard. Ide went to the house and called Reeves. Upon getting no response, he entered the house through the back door. The house had been ransacked. A good many of the kitchen cupboards where Alan Reeves had kept dishes were bare. Upon reaching Reeves' bedroom, he saw Reeves' shotgun (which Reeves kept in a corner of his bedroom) lying on the bed. He called his mother-in-law to see if Alan Shirley's car was still at her home because he thought that the victims might be off in the other car and unaware of the situation at the house. When he learned that the car was still at the elder Reeves' home, he called the police. Members of the Burke County Sheriff's Department, GBI agents, and several members of the Reeves family arrived and stayed most of the night. Ide himself left briefly about 3:00 or 4:00 a.m., then returned, parked across the road and watched the house.

About daylight the next morning, Ide, along with Alan Reeves' father and his fiancee's father and brother searched the area behind the house, including a cornfield into which discernible footprints led. They found the victims' bodies in the cornfield about 150 to 200 yards from the house. The holster for Reeves' gun was found near the bodies. Shirley's wallet was lying by his body; some of its contents were strewn around on the ground but there was no cash in or near it. Shirley's mother testified that she customarily did her son's banking because he worked some 30 miles from home and that on July 2 she took her son's check to the bank and brought home $100 in cash for him to take on his trip to spend the 4th of July with Alan Reeves. She placed the cash in a place known only to her and her son, where she regularly left his money so that he did not have to ask her for it. There was already $60 there when she added the $100 to it. When she was called on the evening of July 3 and told her son was missing, she

checked and the $100 was gone but $60 was still there.

David McFeeley, Jr., an investigator for the Burke County Sheriff's Department, arrived at Alan Reeves' home later in the evening of July 3rd. He called in Special Agent Preston Purvis of the GBI to aid in the investigation. Upon his arrival, McFeeley prepared a list of missing items with the aid of Alan Reeves' family and fiancee. He left at about 3 a.m.; when he returned the next morning he was told that the bodies had been discovered in the cornfield. He established a perimeter line "a considerable distance back from the actual crime scene" and secured the area. He testified that he observed three sets of footprints leading into the cornfield, past the holster, to the bodies. Only one set came back out. The two that went in but did not come back out matched the victims' shoes. He also testified that the unidentified prints were unusual in that the left footprint went off at an angle as if whoever made it bent to the left as he walked. Both Agent Purvis and Gary Thiesen, a microanalyst at the Augusta Branch of the State Crime Lab, corroborated this testimony.

At the time of the defendant's arrest on July 10, 1981, he had in his front pocket a claim check to Southside Stores in Augusta and $120 in cash. Tracing the claim check, officers recovered a Pioneer Centrex stereo set. Alan Reeves' fiancee, Janice Mead, identified it as having been at the house prior to the murders. The Southside Stereo tag showed that it was brought in by Hill Rivers.

Officers searched the defendant's trailer and found numerous items that were identified by Janice Mead as having been at Reeves' home prior to July 3, among them two University of Georgia Coke bottles, certain cartoon glasses, plates with a chicken (rooster) design, a fan, frozen deer meat and record albums. A Christopher Cross album with a gift card attached to it which read "Janice MaMa and PaPa Bailey" was among these records. She also identified Alan Reeves' class ring which was found in Rivers' car. An acquaintance of the defendant, Eddie Reed, testified that the defendant brought Alan Reeves' black and white television to him on July 10, hoping he could sell it for him. This set was missing a channel knob. Janice Mead, Alan Reeves' fiancee, found the knob on the bedroom floor later in July and identified the television. Silas Evans, a service station operator who knew the defendant as a customer, testified that the defendant left a Delco radio tape cassette player with him hoping he could sell it. Janice Mead identified it as having been at Reeves' home prior to July 3. Numerous other items which were missing from Reeves' home were found in the defendant's possession.

Warren Tillman, a pathologist with the State Crime Laboratory, testified that both victims died as a result of gunshot wounds to the

head. Both were shot in the head above the right ear with bullets that exited through the victims' foreheads. Both victims were also shot above the buttocks, and Reeves was additionally shot in the upper left arm. The bullet that struck Reeves in the buttocks exited from his thigh.

A bullet was recovered from the ground under each of the victim's heads. In addition to these two bullets, a bullet was recovered during Reeves' autopsy when it fell out of his pants as they were removed.

Because Janice Mead informed the investigating officers that Alan Reeves had used a chinaberry tree in the back yard for target practice, agent Purvis sawed off a limb of the tree and transported it to Gary Thiesen, a microanalyst at the Augusta branch of the State Crime Lab. Thiesen removed two bullets from the limb. Thiesen testified that all five of these bullets (one from under Alan Reeves' head, one from under Alan Shirley's head, one from under Alan Reeves' clothing and two from the chinaberry tree) were fired by the same weapon.

The state contended at this trial that the events of July 3 in Burke County were the first crimes in a spree. In support of this contention and in order to prove that the defendant committed the crimes at issue here, the state produced evidence that linked the defendant to crimes that occurred in McDuffie and Columbia Counties on July 4. In McDuffie County, Hattie Watts, her son Ricky Watts and her granddaughter Alicia Watts were murdered and Hattie Watts' home was burglarized.[1] Three eyewitnesses identified the defendant as having been in the vicinity of Hattie Watts' home at about 7 p.m. on July 4, immediately before these crimes occurred. One of these witnesses testified that the defendant was driving a white Ford with a white grille, another testified that he was driving a white car with a white grille, and the third testified that he was driving a white car but he did not notice the grille. Gary Thiesen identified footprints found at the scene of the crime in McDuffie County as matching those found leading into and out of the cornfield behind Alan Reeves' home. Thiesen also identified four bullets that were recovered in connection with the murders of the Watts'. One was recovered from the floor of Hattie Watts' home, another was recovered during the autopsy on Hattie Watts, one was recovered from the wall behind the sofa where Ricky Watts' body was found,

---

[1] For a complete statement of the facts in that case, see *Rivers v. State*, 250 Ga. 303, post. Although the McDuffie County case was tried first, the Burke County case (this case) was docketed here first.

and one was recovered from the sofa cushion under Ricky Watts' head. Thiesen testified that all four of these bullets were fired by the same weapon that fired the five bullets he analyzed in connection with the murders of Reeves and Shirley.

Numerous tire tracks around the Watts' residence had been made by a vehicle which never travelled in reverse and which had three regular tires and one ground-grip or mud-grip tire on the left rear. A cash box taken from a home robbed in Columbia County on July 4 and discarded outside Hattie Watts' home bore a fingerprint identified as having been made by Hill Rivers. Four rings taken in the Columbia County burglary were found in the defendant's pocket when he was arrested on July 10.

A. D. Adams of Adams Trailer Park in Augusta, Georgia, testified that the defendant was renting a trailer from him in the summer of 1981. He failed to pay rent when it was due on June 22. On Friday, July 3, Adams told the defendant to either pay or to get out. When the defendant asked if he could have until Monday to pay, Adams agreed. On July 5, the defendant paid $185.00 for the month's rent plus a late charge of $6.50. Another resident of the trailer park, Robert Storm, testified that on the morning of July 4 the defendant came to his trailer and repaid $5.00 that he owed him. The defendant also gave him three packages of deer meat. At this time Storm noticed that the defendant was wearing a college ring that was two or three sizes too big for his finger. Storm testified that it was similar to the ring which was taken from Alan Reeves.

Storm and another resident of the trailer park, Donna Camp, testified that on July 3 and 4, 1981, the defendant was driving a white Ford with a red grille which had three regular tires and one snow or mud-grip tire on the left rear wheel. Donna Camp saw the defendant painting the grille white in the early afternoon of the 4th; Robert Storm testified that it was painted white sometime on the 4th but he did not see the defendant doing it. Silas Evans, a mechanic, testified that he worked on a white Ford for the defendant on the morning of July 2nd or 3rd and that the car did not have a reverse gear. Willie Fleming, an acquaintance of the defendant, testified that the defendant bought a used Pontiac from him on July 8 or 10 for $275.00.

Hill Rivers testified in his own defense but presented no other witnesses. He stated that at about 5 p.m. on July 3rd, he and the woman he lived with went to a friend's house in a community called Nellyville. At about 6:30 p.m., he left for Columbia, South Carolina. He left his companion in Nellyville to catch a bus back to Adams Trailer Park. He was back home by 11:00 or 11:30 p.m. On the 4th of July, they went back to Nellyville at about 4:00 p.m. At 7:00 or 7:30

p.m., he left and drove to Columbia, South Carolina. While in Columbia he somehow acquired $1100; he refused to explain how he got the money other than to say it was from some people he knew. Also in Columbia, at about 9:30 or 9:45 p.m., he met a man in a light grey station wagon who had a load of household goods and food he wanted to sell. The man claimed he wanted to sell the goods because "he and his old lady had busted up." The defendant paid him $300 for the goods and took them home. Many of these articles were shown to have been stolen in the burglaries in Burke and Columbia Counties.

Although the defendant conceded that many of the items in his possession might have been stolen (while maintaining that he bought them in good faith from a man he thought they belonged to), he claimed that he had had all of the five rings in his possession for some time. He testified that he had bought a University of Georgia ring some two years earlier from a man in Hardwick County. The ring allegedly found in his suitcase and admitted into evidence bore the initials "ABR" (Alan Butler Reeves). The defendant said he never saw any initials on the ring he had and suggested they had been switched. As for the four rings identified as having been stolen from a home in Columbia County, the defendant testified that he had bought them a year ago in Swainsboro from a man named John Edwards.

1. The defendant contends that the evidence is insufficient to support his convictions on the two counts of armed robbery and the two counts of kidnapping.

The defendant first argues that he could not be convicted under the indictments for armed robbery because they charged him with armed robbery by use of an offensive weapon, "to-wit: a certain pistol," and the weapon he allegedly used (Reeves' own pistol) was never recovered. Apparently his argument is that by using the phrase "a certain pistol" in the indictment, the state obligated itself to produce the pistol. We disagree, and note that the defendant cites no authority for this proposition and we are aware of none.

In relation to Reeves, however, the property the defendant was indicted for taking was Reeves' pistol. There is no evidence that the defendant had a weapon with him when he reached Reeves' home, or that he used any weapon other than Reeves' own pistol.[2] We agree with the defendant that he cannot be convicted of armed robbery

---

[2] Although Reeves' shotgun was not in its customary place when the crimes were discovered, there is no indication of when it was moved or who moved it.

where the offensive weapon used to perpetrate the armed robbery is also the only fruit of the armed robbery itself. The conviction for the armed robbery of Alan Reeves must be reversed.

The defendant also contends that the evidence is insufficient to support his conviction for the armed robbery of Alan Shirley because the evidence was insufficient to prove that Alan Shirley had $100 at the time of his murder. We disagree. Alan Shirley's mother established by her testimony that her son had taken $100 with him to have for the 4th of July weekend, which he planned to spend with Alan Reeves. Alan Shirley arrived at Alan Reeves' mother's home at about 4 p.m. on July 3. The victims left together some three hours later, stopped by the Ide's home, and proceeded to Alan Reeves' home where they were murdered. Alan Shirley's wallet, empty of money, was found by his body. Reviewing the evidence in the light most favorable to the jury's verdict, we find that it was sufficient to enable a rational trier of fact to find the defendant guilty of the armed robbery of Alan Shirley beyond a reasonable doubt. *Gilreath v. State,* 247 Ga. 814, 834 (279 SE2d 650) (1981); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[3]

The defendant also contends that the evidence was insufficient to support his convictions for kidnapping because "the only evidence as to the kidnapping was the testimony concerning overlapping footprints into the cornfield. . . ."[4] This is simply an inaccurate summation of the evidence. The evidence taken as a whole enables a rational trier of fact to find beyond a reasonable doubt that the victims were marched into the cornfield at gunpoint by the defendant. *Gilreath v. State,* supra; Jackson v. Virginia, supra.

2. The defendant was arrested on July 10, 1981. On that same day his trailer was searched pursuant to a warrant. Although he does not attack the sufficiency of the warrant, he does contend that the

---

[3] The fact that the evidence does not establish beyond a reasonable doubt that Alan Shirley had the entire $100 with him, i. e., he may have bought gas, etc., does not require reversal because it does not create a fatal variance between the allegata and the probata. *Stevens v. State,* 158 Ga. App. 656 (2) (281 SE2d 629) (1981).

[4] The defendant does not enumerate error in regard to the finding of the bodily injury element of the crime of kidnapping with bodily injury. We note, however, that there is no evidence as to the order in which the shots occurred, so that it is possible that the shots in each of the victims' buttocks and the shot in Reeves' arm were fired after the victims had died. Taken as a whole, the evidence does indicate that the shots were relatively simultaneous. In these circumstances, we hold that a jury's verdict finding the crime of kidnapping with bodily injury is supported by the evidence and will be affirmed on appeal. Jackson v. Virginia, supra, 443 U. S. 307; see also *Potts v. State,* 241 Ga. 67 (11) (243 SE2d 510) (1978); *Wilson v. State,* 246 Ga. 62 (3) (B) (268 SE2d 895) (1980), cert. den. 101 SC 901 (1981).

evidence seized should have been suppressed on his motion because the return on the search warrant was filed in the State Court of Richmond County, which he argues is not, in this case, a court of competent jurisdiction within the meaning of Code Ann. § 27-310. The state argues that the State Court, while not empowered to try felony cases, is empowered to issue search warrants, and therefore is a court of competent jurisdiction. We find it unnecessary to resolve that issue, however, in view of Code Ann., § 27-312, which provides: "No warrant shall be quashed nor evidence suppressed because of technical irregularity not affecting the substantial rights of the accused." See also Code Ann. § 27-313 (a) (2). The defendant admits that he received a copy of the inventory prior to trial, and he recognizes that since the filing of the return is a ministerial act, suppression will not be ordered, at least in the absence of a showing of prejudice to the defendant. *Williams v. State,* 125 Ga. App. 170 (1) (186 SE2d 756) (1971); *Lewis v. State,* 126 Ga. App. 123 (2) (a) (190 SE2d 123) (1972).

In an effort to show prejudice defendant's counsel contends that the fact that the state did not comply with the letter of the law and that his attorney was unable to compel the state to do so caused the defendant to lose faith in his appointed counsel. As a result of this loss of faith, the defendant allegedly did not work with his attorney in preparing his defense. There are two flaws in this argument. The first is that a defendant cannot convert harmless error to reversible error by simply attaching to an incident more significance than it in fact bears. The second is that throughout the pretrial and trial, the defendant was asked by the trial court whether he was satisfied with his attorney or had any objections as to how he handled the case. The defendant voiced general satisfaction and did not voice any complaints. He cannot now complain that a specific pretrial incident destroyed his faith in his attorney. This enumeration of error is without merit.

3. On July 10, 1981, when the defendant was arrested and his trailer was searched, his two cars were seized pursuant to a search warrant and transported to the State Crime Laboratory in Augusta where they were secured. July 10, 1981, was a Friday. On the following Tuesday, July 14, the defendant asked that a certain overnight case in one of the cars be brought to him because he needed medical supplies which were in it.[5] An officer went to pick up the case. The cars were in the immediate custody of Gary Theisen. Theisen found that although

---

[5] The defendant had had a colostomy and needed an irrigation pouch and a colostomy bag.

the overnight case was not locked, the lock mechanism was stuck. Theisen testified that because other medical supplies were loose in the car, he jimmied open the case to make sure that the items the defendant needed were in it. Theisen also testified that he opened the case before sending it to the defendant in order to search it pursuant to the warrant. He testified that he had not executed the search warrant on the cars on Saturday or Sunday because they were not working days, and that he had not had time to search and inventory the cars on Monday. Upon opening the overnight case, he found a University of Georgia class ring which was identified at trial as having belonged to one of the victims, Alan Reeves.

The defendant does not contend that the case could not be opened in execution of the search warrant, and in view of the fact that both the cars and the ring were specified in the warrant, such a contention would be fruitless. United States v. Ross, —— U. S. —— (102 SC 2157, 72 LE2d 572) (1982); United States v. Morris, 647 F2d 568 (5th Cir. 1981). Rather he contends that the search came too late. Relying on Brett v. United States, 412 F2d 401, 405-06 (5th Cir. 1969), he argues that the search warrant was executed on July 10 when the cars were seized, and that the officers needed a new warrant to search the cars on July 14. Brett v. United States, supra, is totally inapposite since there was no search warrant in that case. Where, as here, a car is seized pursuant to a warrant and secured, there is no requirement that it be searched at once. If the warrant suffices to show probable cause for a search of the car, once the car is secured the probable cause continues to exist, as does the authorization to search, at least for 10 days. See Code Ann. § 27-306. Thus we hold that the trial court did not err in overruling the motion to suppress.

4. The defendant complains that material relating to fingerprint identification of the defendant was admitted into evidence in violation of Code Ann. § 27-1303. Although his brief does not specify the evidence he is complaining about, the record shows that he requested both scientific reports and enlargements made as jury aids. The record also shows that the district attorney provided him with the Crime Lab Report on fingerprints when it was received by him. Although this report was not admitted into evidence, the testimony of the fingerprint examiner for the state included its contents. The report was a somewhat conclusory statement that the print found on the cash box which had been taken from the Columbia County home and discarded near Hattie Watts' home matched a print taken from the defendant. The defendant's objection at trial and enumeration of error on appeal do not relate to this report. Rather he appears to be complaining that he was not provided with a copy of the englargements of the prints which were used by the

fingerprint examiner to demonstrate his analysis to the jury. Alternatively, his complaint may be that the fingerprint examiner at the State Crime Lab did not prepare a report detailing his visual analysis of the prints. In either case we find no error. The state was not obligated to prepare an additional written report for the defense, and the enlargements, which were prepared as jury aids, have not been shown to be a written scientific report within the meaning of Code Ann. § 27-1303. See *Hartline v. State,* 161 Ga. App. 847 (2) (288 SE2d 902) (1982).

5. Relying on *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976); *State v. Johnson,* 246 Ga. 654 (272 SE2d 321) (1980); and *Lane v. State,* 247 Ga. 19 (273 SE2d 397) (1981), the defendant contends that the trial court erred in admitting evidence of the crimes in McDuffie and Columbia Counties over his objection. We disagree.

The cases cited by the defendant all involve applications of Code Ann. § 38-202, which provides: "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." This presents a classic case for application of the exception: in order to prove that the defendant committed the murders, kidnappings, armed robbery and burglary in Burke County, it is necessary and proper to introduce evidence relating to the crimes in Columbia and McDuffie Counties.[6] Thus, the statute not only provides no bar but in fact authorizes the introduction of the evidence.

The cases are in accord. *French v. State,* supra, 237 Ga. at 621, states the rule: "[T]here must be evidence that the defendant was in fact the perpetrator of the independent crime [and] there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter." Both *State v. Johnson,* supra, and *Lane v. State,* supra, apply

---

[6] The defendant was not seen at the Reeves home in Burke County. However, he was identified by three eyewitnesses as being in the vicinity of the Watts home in McDuffie County shortly before the murders there. The defendant owned a white Ford which would not back up and had one mud-grip tire at the left rear. Tire tracks at the Watts home in McDuffie County showed that the vehicle would not back up and had a mud-grip tire at the left rear. Defendant's fingerprint was found on the cash box taken in the Columbia County burglary and found near the Watts home in McDuffie County. The defendant was found in possession of items stolen in Columbia and Burke Counties. Alan Reeves' gun was used in the Burke County murders and in the McDuffie County murders.

the rule expressed in *French.* Since the prerequisites established by *French* (evidence that the defendant was the perpetrator of the other crimes and a logical connection between the crimes) were established here, the trial court did not err in overruling the defendant's objection to admission of the evidence.[7]

6. The defendant contends in three enumerations of error that the trial court erred in overruling his motions for mistrial based on comments on the evidence made by the trial court and the district attorney. Code Ann. §§ 81-1104, 81-1009. Although he does not cite the pages in the record which underlie his complaint, the state in its brief does identify the instances it believes the defendant to be referring to; since the defendant later filed a supplemental brief on another issue without making reference to these enumerations, we assume the state correctly identified the instances complained of by the defendant.

Having reviewed all three instances referred to, we find that none of them mandate reversal nor do they merit extended discussion. If the comments complained of were error at all (and those made by the trial court were not), they were harmless error. We note that on only one of the instances, that of a comment made by the trial court, did the defendant preserve his right to appeal by making a motion for mistrial. He did not object at all to one comment he now complains of, and he withdrew his motion for mistrial which was occasioned by another.[8] These enumerations of error are without merit.

7. Defendant raises seven enumerations of error concerning the trial court's charge in the guilt/innocence phase of the trial. In six of those enumerations he complains that the charges he requested on independent crimes and similar offenses, circumstantial evidence, and the presumption of innocence and reasonable doubt were not given, and that the trial court erred in charging as it did on independent crimes and similar offenses, direct evidence, and the presumption of innocence and reasonable doubt. We have examined the charge carefully and determined that as to these matters it was full, complete and correct. Where the trial judge correctly charges as

---

[7] The defendant enumerated as error the admission of evidence as to the McDuffie County crimes on the additional ground that his convictions for those crimes are on appeal. Although he abandoned this enumeration by failure to argue it, Supreme Court Rule 45, we note that it is without merit.

[8] We note in this connection that we have reviewed the entire record pursuant to the Unified Appeal procedure and find no comments by the court or the district attorney which would require reversal. We do note that numerous bench conferences and the poll of the jury were not recorded. See 246 Ga. A-1, A-14(4).

to the matters contained in the defendant's requests to charge, it is not error not to charge in the exact language requested. *Nelson v. State,* 247 Ga. 172 (12) (274 SE2d 317), cert. den., 102 SC 365 (1981); *Adams v. State,* 242 Ga. 239 (4) (248 SE2d 638) (1978). Thus these enumerations of error are without merit.

8. Defendant's final complaint concerning the charge in the guilt/innocence phase of the trial is that the trial court erred in failing to charge on alibi without request because that was the sole defense. The state responds that where the question of personal identity and alibi are virtually the same defense, the failure to charge separately on alibi is not error; that where the evidence of alibi is not clear and of strong probative value, failure to charge on alibi is not reversible error absent a request; and that this court should hold that where the court charges that the state has the burden of proving the defendant guilty beyond a reasonable doubt, it is not error to fail to charge on alibi absent a request.

Analysis of the development of the law relative to charging on alibi is helpful in resolving the question presented. Until this court's decision in *Patterson v. State,* 233 Ga. 724 (7) (213 SE2d 612) (1975), trial judges in this state regularly charged the jury to the effect that the defendant had the burden of establishing alibi as a defense to the reasonable satisfaction of the jury. *Patterson v. State,* supra; *Johnson v. State,* 59 Ga. 143 (1) (1877). Thus while alibi was not in fact an affirmative defense, it was generally treated as one. For a discussion of the confusion over the nature of the alibi defense, see *Parham v. State,* 120 Ga. App. 723, 727 (171 SE2d 911) (1969).

Statutory affirmative defenses in Georgia include justification, coercion, and entrapment. Code Ann. §§ 26-901-07. Prior to this court's decision in *Lavender v. State,* 234 Ga. 608 (2) (216 SE2d 855) (1975), this court generally held that where the evidence was sufficient to raise an issue as to an affirmative defense, the trial court was required to charge on the affirmative defense even absent a request. See, e.g., *Witt v. State,* 231 Ga. 4 (200 SE2d 112) (1973), overruled, *Lavender v. State,* supra. This rule was often (but not always, see *Wheeler v. State,* 228 Ga. 402 (2) (185 SE2d 900) (1971)), applied to the defense of alibi, no doubt in large part because of the confusion over whether alibi was an affirmative defense. See, e.g., *Pippins v. State,* 224 Ga. 462 (4) (162 SE2d 338) (1968). As noted above, *Lavender v. State* changed the rule that it was ordinarily error to fail to charge on an affirmative defense absent a request. The current state of the law is explained in *Booker v. State,* 247 Ga. 74 (274 SE2d 334) (1981): "If an affirmative defense is raised by the evidence, including the defendant's own statements, the trial court must present the affirmative defense to the jury as part of the case in

its charge, even absent a request. The affirmative defense, however, need not be specifically charged if the case as a whole is fairly presented to the jury. *Lavender v. State,* supra."

We find that the rule enunciated in *Lavender* and *Booker* as to affirmative defenses applies, a fortiori, to alibi. Both the courts and commentators have long noted that since the true effect of an alibi defense is to traverse the state's proof that the defendant committed the crime, the charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt. *Trimble v. State,* 229 Ga. 399 (191 SE2d 857) (1972) (dissenting opinion); *Bone v. State,* 102 Ga. 387, 393 (30 SE 845) (1897); *Smith v. State,* 3 Ga. App. 803 (61 SE 737) (1907); Green, the Georgia Law of Evidence, § 21, p. 75 (1957); 11 EGL (Evidence) § 138, p. 379 (1967). We conclude that it is ordinarily not error to fail to charge specifically on alibi absent a request. We note that in so ruling we join a substantial number of jurisdictions which have also adopted this view. Annot., 72 ALR3d 547 (1976).

Furthermore, having examined the evidence and the charge in this case, we hold that the trial court did not err in failing to charge on alibi. The trial court did charge, completely and correctly, on the defendant's presumption of innocence, on the state's burden of proving beyond a reasonable doubt that the defendant committed the crimes at issue, and on credibility of witnesses. The state produced evidence sufficient to prove beyond a reasonable doubt that the defendant perpetrated these crimes; the defendant testified that he did not do so, and that he could not have done so because he was traveling to or in another state at the time they occurred. The absence of a charge on alibi did not change the fact that no juror who believed the defendant's testimony could find that the state had carried its burden of proof.

9. Defendant's remaining enumerations of error deal with his objections to the charge in the sentencing phase. He first complains that the trial court erred in not giving his requested charge to the effect that the jury could not find any aggravating circumstance where the evidence of the existence of the aggravating circumstance was purely circumstantial. Since the requested charge was not an accurate statement of the law, the trial court did not err in not giving it. *Nelson v. State,* supra, 247 Ga. 172; *Gilreath v. State,* supra, 247 Ga. 814, 840; *Douthit v. State,* 239 Ga. 81, 89 (235 SE2d 493) (1977).

The defendant next complains that the trial court erred in charging to the jury the aggravating circumstance that "the murder of Alan Phillip Shirley was committed while the offender was engaged in the commission of another capital felony, that being the

murder of Alan Butler Reeves." He contends that since there was no evidence as to which of the victims died first, the trial court should instead have charged, as he requested: "[Y]ou cannot use the Aggravating Circumstance that 'the murder of Alan Phillip Shirley was committed while the offender was engaged in the commission of another capital felony, to wit: the murder of Alan Butler Reeves' unless you find that there is some evidence as to which man died first." Again the requested charge was not an accurate statement of the law and the trial court did not err in not giving it or in giving the charge he did give. *Gilreath v. State,* supra, 247 Ga. at 837.

Finally, the defendant contends that the trial court erred in giving the following charge: "You are charged that the law recognizes the existence of circumstances which don't justify or excuse crimes for which the defendant has been found guilty and for which he may be sentenced to death, but which in fairness and mercy may be considered as lessening the evil and wicked nature of these criminal acts. Such circumstances are called mitigating circumstances." He argues that the court expressed an opinion as to the nature of the crimes for which he was convicted by calling them "evil and wicked," and that this error was prejudicial and requires that the death penalty be set aside. We cannot agree that this charge could have been prejudicial to the defendant. Therefore this enumeration of error is without merit.

### Sentence Review

10. The jury found that the murder of Alan Shirley was committed during the commission of three other capital felonies: armed robbery of Alan Shirley, kidnapping with bodily injury of Alan Shirley, and murder of Alan Reeves. These statutory aggravating circumstances are supported by the evidence beyond a reasonable doubt.

The jury found that the murder of Alan Reeves was committed during the commission of two other capital felonies: armed robbery of Alan Reeves and kidnapping with bodily injury of Alan Reeves. Defendant's conviction for the armed robbery of Alan Reeves has been set aside (see Division 1). For the same reasons, the statutory aggravating circumstances found by the jury, that the murder of Alan Reeves was committed during the armed robbery of Alan Reeves, must be set aside. One statutory aggravating circumstance remains to support the death penalty for the murder of Alan Reeves, the kidnapping with bodily injury of Alan Reeves. The jury's finding of the statutory aggravating circumstance which we have set aside does not affect the proceedings so as to invalidate the death sentence for the murder of Alan Reeves. *Zant v. Stephens,* 250 Ga. 97 (297 SE2d

1) (1982); *Waters v. State,* 248 Ga. 355 (16) (283 SE2d 238) (1981); *Stevens v. State,* 247 Ga. 698, 709 (278 SE2d 398) (1981); *Burger v. State,* 245 Ga. 458, 462 (265 SE2d 796), cert. den., 446 U. S. 988 (1980); *Gates v. State,* 244 Ga. 587, 599 (261 SE2d 349) (1979), cert. den., 445 U. S. 938 (1980).

We find that the sentences of death for the murders of Alan Shirley and Alan Reeves were not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The similar cases listed in the appendix support the death penalty in this case. Those cases show that juries find that the death penalty is appropriate punishment where a defendant is found to have been the actual perpetrator of, or active participant in, double murders committed upon victims who are unrelated to the defendant. Features frequently found in such cases are burglaries, armed robberies or kidnappings. In this case, the defendant, an adult, was found guilty of being the actual perpetrator in robbing, kidnapping and murdering two people unknown to him while burglarizing one victim's house.

The jury also had before it evidence that this defendant murdered three victims in McDuffie County. The following cases show that juries find that the death penalty is appropriate punishment where an adult is found to have perpetrated three or more murders: *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976), cert. den., 431 U. S. 909 (1977); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976), cert. den., 429 U. S. 986 (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976), cert. den., 429 U. S. 986 (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977), cert. den., 434 U. S. 1002 (1977).

The sentences of death imposed in this case are neither excessive nor disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

The defendant's conviction for the armed robbery of Alan Reeves must be set aside (see Division 1). His convictions for the murders of Alan Reeves and Alan Shirley, for the burglary of Reeves' home, for the armed robbery of Alan Shirley, and for the kidnapping with bodily injury of Reeves and Shirley, and his death sentences for the murders of Reeves and Shirley, are affirmed.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 10, 1982 —
REHEARING DENIED NOVEMBER 29, 1982.

*O. L. Collins,* for appellant.
*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard,*

*Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Finney v. State,* 242 Ga. 582 (250 SE2d 388) (1978); *Holton v. State,* 243 Ga. 312 (253 SE2d 736) (1979); *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981); *Mathis v. State,* 249 Ga. 454 (291 SE2d 489) (1982).